## UNITED STATES v. HORNSTEIN.
### No. 9714.

United States Court of Appeals
Seventh Circuit.

June 28, 1949.

Rehearing Denied Aug. 3, 1949.

218

Michael F. Mulcahy, Henry W. Dieringer, Chicago, Ill. for appellant.

Otto Kerner, Jr., U. S. Atty., Edward J. Ryan, Asst. U. S. Atty., Chicago, Ill., Robert J. Downing, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MINTON and DUFFY, Circuit Judges, and LINDLEY, District Judge.

DUFFY, Circuit Judge.

This is an appeal from a judgment of the district court entered on the verdict of a jury finding the defendant guilty on three counts of an indictment charging him with wilfully attempting to defeat and evade payment of his income taxes for the calendar years 1941, 1942, and 1943. The court imposed a general sentence of imprisonment for a period of three years.

During the years covered by the indictment defendant was engaged in the business of buying and selling diamonds and jewelry. In 1941 and 1942 he operated as the Interstate Diamond Brokers in Chicago, Illinois, and in 1943 he opened and operated the Clark Jewel Shop, also in Chicago. Defendant filed income tax returns for the years in question, each bearing his signature, declaring his net taxable income and computing his tax due thereon as follows:

| Year | Net Taxable Income | Tax Due Thereon |
|---|---|---|
| 1941 | $ 4,961.60 | $ 315.64 |
| 1942 | 5,680.81 | 825.92 |
| 1943 | 7,352.71 | 1,465.84 |

The government offered evidence to prove that the defendant's tax liability over and above the amount shown on his returns for the year 1941 was $18,467.22, and for 1942 was $51,445.77, and for 1943, was $37,303.95.

Various errors are assigned but they are principally directed to the propositions that the evidence does not sustain the verdict and judgment, that the trial court abused its discretion by unreasonably limiting questions on cross-examination, and that a hypothetical question asked a government witness was improperly stated and the objection thereto improperly overruled. Defendant also argues that at worst the defendant is guilty only of a misdemeanor under Sec. 145(a) and not a felony under Sec. 145(b), Internal Revenue Code, 26 U. S.C.A. § 145(a, b).

A large part of the oral argument of counsel for defendant before this court, as well as a considerable portion of his brief, were directed to alleged errors at the trial which pertain to income received by defendant during the year 1943. However, we need not consider these alleged errors, because we are convinced that the district court did not commit reversible error so far as Counts 1 and 2 are concerned. The court was authorized

to impose, on each count of the indictment of which the defendant was found guilty, a fine of not more than $10,000 or a sentence of imprisonment for five years, or both. In imposing the three-year sentence on all counts the defendant was not prejudiced even if errors were committed as to Count 3. United States v. Sheridan, 329 U. S. 379, 67 S.Ct. 332, 91 L.Ed. 359; Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774; United States v. Perplies, 7 Cir., 165 F.2d 874; United States v. McDermott, 7 Cir., 131 F.2d 313. Where the sentence imposed is one which could have been properly imposed on each count of the indictment, one good count will support a general conviction regardless of errors as to the other count or counts. Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173; United States v. Perplies, supra. We, therefore, consider only the evidence pertaining to the years 1941 and 1942, and the assignments of error so far as they pertain to those years.

The government's evidence clearly showed suppressed sales for the years 1941 and 1942. In 1941 defendant received $42,618.-38 for the sale of goods and merchandise over and above the $24,301 that was recorded on his books. In 1942 he received $70,333 from the sale of goods and merchandise over and above the $56,074.60 as shown by his books. Defendant could not deny that he failed to record in his books over half of his sales made in 1941 and 1942, but tried to place the responsibility for the inaccuracy of his books upon his wife who is dead and upon a cousin whose whereabouts is unknown.

Defendant also contended that his unrecorded sales were made at a loss, and in support thereof related a somewhat fantastic story which the jury apparently refused to believe, to wit: Defendant says that in 1928 and 1929 he purchased a large number of diamonds which he could not sell because the bottom fell out of the diamond market in the 1929 crash and the depression which followed; that from 1928-1929 to 1941 he had no lock box in which to keep the diamonds, and therefore kept them at his home in a hole in the kitchen floor, in a box in a closet and in a desk drawer with a false bottom; that he sold $20,000 worth of such diamonds in 1941, and $45,000 worth in 1942, but later he changed the figures for the 1942 sales to $25,000. Defendant insists that all these sales of diamonds were made at a loss, but offered no evidence other than his own word in support of such claim. The balance of the unrecorded sales defendant claimed came from the sale of jewelry on commission.

To offset the hidden diamonds story the government produced statements made by defendant to investigating agents that in 1937 he operated the Randolph Jewel Shop which failed; that at that time he had practically no assets or capital. Defendant did not deny these statements on the trial. He also admitted that during the long period of investigation and interviews with government agents he had never told them the hidden diamonds story.

During the period of the investigation defendant, without explanation, handed to one of the investigating agents some old bills which he said pertained to the late 1920's and early 1930's. The agent handed the bills back to the defendant saying they did not cover the period under investigation. At the trial the defendant claimed that these bills covered some of his diamond purchases in 1929, but he was unable to produce any of them and had no explanation of what had become of them. When asked how many bills there were and as to what amounts were covered thereby, he was extremely uncertain and hazy. With no other supporting proof the jury apparently was unwilling to accept the defendant's word as to these accounts.

Defendant complains because in the government's computation of the taxes due the agents adopted the figure for cost of goods sold which he had used in preparing his tax returns for the years 1941 and 1942. The evidence disclosed that defendant's tax returns for the years in question were prepared by accountants at defendant's request from books and records furnished to them by the defendant.

It is true that the government agents took the receipts from sales as reported and de-

ducted the gross income to arrive at a figure for the cost of goods sold. The 1941 computation was as follows:

Total receipts from sales used in
computing 1941 tax return... $24,301.00
Gross income, per 1941 return.. 7,453.40
Cost of goods sold that was used
in computing gross income ... 16,847.60

Using a similar calculation for 1942, the cost of goods sold item that was used in computing 1942 income was $47,581.60. But defendant insists such computation is erroneous as his books showed purchases in 1942 of $66,426.50. However, the fact that defendant made purchases of merchandise totaling $66,426.50 in 1942 does not mean that all of that specific merchandise was sold during that year. Such figure might have had some significance in connection with an opening and closing inventory for 1941, but the record (Exhibit 101) showed no such figures. Furthermore, it should be noted that under the calculations relied on by the government, all of the deductions of which the defendant availed himself for the years 1941 and 1942 were in fact allowed to him.

The figures of cost of goods sold, as they were used in preparing his tax returns, were at least admissions by the defendant which the government could utilize in making a prima facie case. The defendant was chargeable with them until he offered credible evidence to show that the figures were in error, and that his costs were greater. In fact, defendant attempted to produce such evidence, but the jury apparently rejected his explanation.

Evidence of unexplained funds or property in the hands of a taxpayer establishes a prima facie case of understatement of income. It is then incumbent on the defendant to overcome the logical inferences to be drawn from the facts proved. United States v. Zimmerman, 7 Cir., 108 F.2d 370; Guzik v. United States, 7 Cir., 54 F.2d 618; Malone v. United States, 7 Cir., 94 F.2d 281. In the Zimmerman case, supra, the government determined taxpayer's gross income from his bank deposits. The defendant there sought to explain that substantially all of his income had been expended in the conduct of his lottery business, and that therefore there was no net income upon which a tax was required. This court said, page 373, citing from 94 F.2d page 288 of the Malone case:

" * * * When, however, he became a witness and sought to explain, the jury was not bound to accept his story as true. * * *"

The defendant herein was under an obligation to keep correct books and records; he did not do so. Having adopted that course he cannot now sit back and insist that the government prove a complete debit and credit account. As was stated in Gleckman v. United States, 8 Cir., 80 F.2d 394, 401:

" * * * Taxation is a practical matter and taxpayers do not terminate all duty to pay income tax by willfully failing to keep account of their income. * * *"

Defendant strongly insists that the trial court committed reversible error when it sustained numerous objections to questions asked by defendant's counsel on cross-examination. Defendant's brief complains, "In the case at bar the defendant never had a chance to test the integrity of the witnesses or to prove the truth of his position by their testimony."

Cross-examination, of course, is the right of the party against whom a witness is called, and the right is a valuable one. The Ottawa, 3 Wall. 268, 70 U.S. 268, 18 L.Ed. 165. A reasonable latitude should be given to the cross-examiner. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. However, the trial judge has the power and duty in his sound discretion to control the scope and extent of such cross-examination. Jelke v. United States, 7 Cir., 255 F. 264, 288; United States v. Tandaric, 7 Cir. 152 F.2d 3, 6.

The government called some 25 consumer witnesses, solely for the purpose of showing that defendant had sold goods to them and had received payments therefor. Then, by reference to the defendant's books, the government showed that such transactions had not been recorded therein. In other words, proof was made of numerous suppressed sales. Defendant's counsel at-

tempted to cross-examine such witnesses as to whether they had sold goods to the defendant. He also asked these witnesses whether defendant had always been fair and honest in his dealings with them. Objections to such questions were sustained.

■ It is apparent that defendant sought to elicit evidence on cross-examination to bear out his defense that the figures as to his costs as shown in his books and in his tax returns were not correct, and that he had additional costs. Such testimony was properly a part of *his* case. The direct examination had to do only with suppressed sales. Under such circumstances we think there was no abuse of discretion in sustaining objections to such questions on cross-examination.

■ The questions as to whether defendant had been honest in his dealings with the consumer witnesses were absolutely immaterial unless the defendant was trying to use his former customers as character witnesses. But he would not have been permitted to get replies to such questions into the record even if he had called them as his own witnesses. While inquiry could have been made as to his reputation, questions relating to his honesty in certain past business deals would have been entirely beside the point.

■ The government, by means of hypothetical questions, asked Agent Coan to make certain computations when he was testifying at the trial. The form of the questions to which defendant objects was: "* * * assuming * * * that the defendant during the calendar years 1941, 1942 and 1943 was married and had one dependent, assume that the defendant for the calendar year 1941 filed an income tax return in which he declared his net taxable income for that year to be $4,941.60, and his tax for that year to be $315.64, but that in truth and in fact his net taxable income for that year was $47,559.98, would there be a tax due?"

The question is poorly phrased. Had the words, "and assume," been used in place of the words, "but that in truth and in fact," there could have been no objection. However, if this be error we do not con-

sider it prejudicial, as the figure $47,559.-98 which the question assumed in fact to be true was obtained as the result of a previous question to which there was no objection.

Defendant's contention that at worst he is guilty of a misdemeanor is based on his claim that his tax deficiencies were the result of bookkeeping errors, and that he had no willful intention to defeat and evade, and he relies upon Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L. Ed. 418.

■ The court properly instructed the jury as to willful intent. Taking the evidence as a whole, the jury was fully warranted in finding beyond a reasonable doubt that the defendant willfully attempted to defeat and evade a large part of the income tax due and owing by him for the years 1941 and 1942. Judgment affirmed.