### BRODELLA v. UNITED STATES.

United States Court of Appeals
Sixth Circuit.

Sept. 5, 1950.

John T. Feighan, Jr., Ned L. Mann, Cleveland, Ohio, for appellant.

Don C. Miller, Frank E. Steel, Cleveland, Ohio, for appellee.

Before MILLER, Circuit Judge.

MILLER, Circuit Judge.

On motion for bail pending appeal, following denial of bail by District Judge. Rule 38(c), Rules of Criminal Procedure, 18 U.S.C.A.

A jury returned a verdict of guilty against appellant under a 3-count indictment which charged him with having wilfully and knowingly attempted to defeat and evade a large part of the income tax due for the calendar years 1943, 1944 and 1945, in violation of Sec. 145(b) Internal Revenue Code, 26 U.S.C.A. § 145(b). The District Judge imposed a general sentence of two years and six months without reference to any specific count. Thereafter he overruled a motion for bail.

■ Appellant's brief in support of his motion states that it is not intended on this motion to deal with the issues to be raised upon the merits when the appeal will be later fully argued before this court. The brief is restricted to a discussion of the contention that the evidence was insufficient to take the case to the jury, and it is urged upon us that this contention involves a substantial question which should be determined by the appellate court, thus entitling the appellant to bail pending appeal. Rule 46(a)(2) Rules of Criminal Procedure. He relies upon United States v. Fenwick, 7 Cir., 177 F.2d 488, and Bryan v. United States, 5 Cir., 175 F.2d 223. Accordingly, our consideration of the motion is confined to that single aspect of the case.

■ The Government relied largely upon the net worth or net asset theory to prove its charge of evasion. Its FBI agent-accountant testified in detail as to the net worth of the appellant as of December 31, 1942, 1943, 1944 and 1945, placing the values as follows:

December 31, 1942 .......... $ 48,056.83
December 31, 1943 .......... 98,362.53
December 31, 1944 .......... 151,179.79
December 31, 1945 .......... 241,897.16

This showed the increase in the appellee's net worth to be as follows for each of the years in question:
Increase during 1943 .......... $50,305.70
Increase during 1944 .......... 52,817.26
Increase during 1945 .......... 90,717.37

The accountant further testified that giving consideration to living expenses and payment of taxes, the appellant's taxable income for 1943 was $55,840.79, whereas the income tax return reported $13,100; for 1944 $60,574.78, whereas the return reported $4,920.40; and for 1945 $95,667.06, whereas the return reported $5,180.96. It is beyond question that on a motion for a directed verdict such evidence on behalf of the Government was sufficient to take the case to the jury, unless the net worth or net asset theory as so used in this case was not a competent or valid means of proving the Government's case. Appellant contends that the method was not properly used in this case for the same reason that the method was adjudged invalid in the Fenwick and Bryan cases referred to above.

■ The Fenwick and Bryan cases hold that when the Government relies upon circumstances of increased net worth and expenditures in excess of reported income to establish income tax evasion the basic net worth at the beginning of the tax year must be clearly and accurately established by competent evidence. This is true because if the reported net worth of the taxpayer at the beginning of the taxable year does not include all of the taxpayer's assets or property, the increase in net worth in subsequent years could come out of the prior existing assets not so included. Convictions were reversed in both the Fenwick and Bryan cases, because in the opinion of the Court the Government's evidence did not accurately establish the basic net worth of the taxpayer at the start of the taxable year in question. We agree with the general principle of law as stated by those cases. However, it is an entirely different question whether the facts of any particular case bring the rule into play. Without here indicating whether we agree or disagree with the results reached in those two cases, under the particular facts therein involved, we agree with the District Judge that the facts in the present case are so ma-

terially different as to make the ruling in those cases inapplicable.

In the Fenwick case [177 F.2d 491], the Government offered no direct testimony of any undisclosed source of income and no proof that the property admittedly owned by the taxpayer at the beginning of the taxable year constituted all the assets he had at that date. There was no proof that the taxpayer had not accumulated cash or assets of other character over the 25 years during which he had been engaged in business. The Government agent admitted on cross examination that he had made no inquiry of defendant as to whether he had cash on hand accumulated from earnings from his business for the years prior thereto. The United States Attorney "remarked that there might have been other assets." The opinion pointed out that the evidence fell far short of excluding "all possible available sources of taxable income from which the increased net worth and the excess expenditures could have been derived."

In the Bryan case, there were available to the Government auditor no financial statements, no books of the defendant showing assets and liabilities, and no admissions by the defendant that could be used as a definite point of beginning. The Government auditor admitted that he did not know whether his computation contained all the assets of the defendant or not, that in making the examination he took into consideration only the recorded purchases that he could find and did not inquire into the cash sales that the defendant made prior to that time, and that his testimony was not intended to mean that the defendant had no money whatsoever other than what was shown in the bank account. The opinion pointed out that the defendant was engaged in operating gambling spots and bars, had been a purveyor of illicit liquor in the prohibition era and according to the testimony of his wife had amassed and secreted in a safe in a closet in his home considerable wealth.

■ In the present case, the establishment of appellee's net worth, as of December 31, 1942, was thorough and in detail. The Government accountant was given access to and studied the books of the taxpayer. The taxpayer subsequently submitted to him a signed financial statement. The agent also talked with the taxpayer personally during the investigation. A careful consideration of the agent's testimony convinces me that the test set up by the opinion in the Fenwick case, namely, that "the net worth of the taxpayer at the beginning of the tax year must be clearly and accurately established by competent evidence", was fully and adequately met in this case. This conclusion seems fully supported by the following cases from the same Circuit as is the Fenwick case: United States v. Skidmore, 7 Cir., 123 F.2d 604, 608-609; United States v. Chapman, 7 Cir., 168 F.2d 997, 1001-1002; United States v. Hornstein, 7 Cir., 176 F.2d 217. Other supporting cases are Schuermann v. United States, 8 Cir., 174 F.2d 397; Stinnett v. United States, 4 Cir., 173 F.2d 129; Jelaza v. United States, 4 Cir., 179 F.2d 202.

■ Appellant attempts to attack the accuracy of the Government's net worth statement as of December 31, 1942 by showing that certain assets were omitted. The evidence showed that Mrs. Brodella owned 23 shares of stock in the Roumanian Savings and Loan Association and also had a savings account in the same institution in the amount of $218.68, which were not included. But neither of these items were included in the net worth statements for the succeeding years and the omission did not affect the computed increase in the subsequent years. There was also evidence that the appellant told the Government agent that he had $140,000 of accumulated cash which was not included in the net worth statement of December 31, 1942. But the evidence also showed that the Government agent had been advised by the taxpayer's agent on August 1, 1946, after making inquiries about the source of this cash, that it came from the estate of Mrs. Brodella's former husband; that between August 1, 1946 and August 21, 1946, the Government agent examined the records at the court house to ascertain the status of the estate of the former husband; that on December 3, 1946, he again questioned the taxpayer about this cash and at that

time the taxpayer stated that it was an error and should be deleted from the statement; and that on December 6, 1946, the taxpayer again changed his story and stated that the figure should be between $50,-000 and $60,000 instead of $140,000. Appellant's contention that no investigation was made to determine the truth or falsity of this statement is not strictly correct in that the record shows that the Government agent stated that he made no investigation after the statement of December 6, 1946 because the investigation was completed at that time. In view of the contradictory statements made by the taxpayer and the investigation of the former husband's estate already made, the Government agent was justified in not reinvestigating the same claim, and in omitting the alleged cash on hand in computing the net worth statement. In any event, the inclusion of some $60,000 in the net worth statement of December 31, 1942 would not have affected the result for the years 1944 and 1945. By December 31, 1944 the net worth of the appellant had increased $103,122.96. Even if the $60,000 had been included in the December 31, 1942 statement, there would still have been a substantial increase in net worth as of December 31, 1944, not reflected by the income tax returns for 1943 and 1944. In the year 1945, there was an additional increase in net worth of $90,717.37. These large annual increases in appellant's net worth also answer his complaint that he did not receive credit in the December 31, 1942 statement for other possibly existing assets, including a bank deposit of $6,-591.26, made on the first business day of 1943 and a disregarded savings account.

There was also evidence on the part of the Government that the reported gross profit from appellant's two businesses was not in line with profits from other businesses of the same type, and that upon investigation it was found that the books failed to disclose various amounts of liquor purchased by appellant from both State stores and out-of-State sources. These totaled $15,-817.21 for the year 1943 and $15,583.16 for the year 1944. The resulting profit from these purchases was not reflected by the

books and was not included in the income tax returns. It was not necessary for the Government to prove the exact amount of unreported income. United States v. Johnson, 319 U.S. 503, 517, 63 S.Ct. 1233, 87 L. Ed. 1546; Jelaza v. United States, supra, 179 F.2d at page 204; Schuermann v. United States, supra, 174 F.2d at page 399.

I am of the opinion that on the aspect of the case now under consideration no substantial question is involved, and, accordingly the motion for bail pending appeal is denied.