## GARIEPY v. UNITED STATES.

### No. 11239.

United States Court of Appeals,
Sixth Circuit.

May 28, 1951.

John W. Babcock, Detroit, Mich. (John W. Babcock, Detroit, Mich., on the brief), for appellant.

Joseph C. Murphy, Detroit, Mich., Joseph B. King, Chicago, Ill. (Edward T. Kane, Joseph C. Murphy, Detroit, Mich., Joseph A. Struett, Joseph B. King, Marc A. White, Attys., Chief Counsel Office Bureau of Internal Revenue, all of Chicago, Ill., on the brief), for appellee.

Before HICKS, Chief Judge, and SIMONS and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appellant on a two count indictment was convicted of violating § 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b), in that he wilfully and knowingly, with intent to defeat and evade a large part of the income tax due and owing by him to the United States, filed and caused to be filed with the Collector of Internal Revenue false and fraudulent returns. He was sentenced on both counts, the sentences were made concurrent, and he challenges the judgment upon numerous grounds.

Appellant's first contention is directed to the sufficiency of the indictment. Section 145(b) punishes an attempt to evade and defeat taxes. The indictment omits the word "attempt," by reason of which it is argued that it fails to notify the accused of the crime with which he is charged. The contention is without merit. While meticulous pleading would have more closely followed the language of the statute, there is no doubt that the appellant was fairly apprised of the offense with which he was charged. Each count charges him with a wilful and knowing intent to defeat and evade his tax by filing a false and fraudulent return. Having the intent and doing the filing in pursuance of it, the counts clearly encompass an attempt. Moreover, at the top of the sheet of the indictment was a reference to § 145(b) of the Internal Revenue Code, Title 26 U.S.C. § 145(b), and at the close of the two counts was a

similar reference. While a recitation of the statute involved is not a necessary part of the indictment, its presence thereon bears upon the question whether the accused was surprised or confused. In any event, the sufficiency of the indictment should have been challenged before witnesses were sworn or the accused otherwise placed in jeopardy.

■ The test of the sufficiency of an indictment is clearly set forth in many cases. Cochran and Sayre v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 39 L.Ed. 704; Rosen v. United States, 161 U.S., 29, 34, 16 S.Ct. 434, 480, 40 L.Ed. 606; United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619; Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; Emmich v. United States, 6 Cir., 298 F. 5. As was said by Mr. Justice Day in the Behrman case, supra, "It is enough to sustain an indictment that the offense be described with sufficient clearness to show a violation of law, and to enable the accused to know the nature and cause of the accusation and to plead the judgment, if one be rendered, in bar of further prosecution for the same offense." [258 U.S. 280, 42 S.Ct. 304.] To which Mr. Justice Holmes, though dissenting on other issues, added, "If this case raised a question of pleading I should go far in agreeing to disregard technicalities that were deemed vital a hundred or perhaps even fifty years ago." It is already 30 years since that observation was made. The present challenge to the sufficiency of the indictment is rejected.

The returns charged by the government with falsely and fraudulently understating the appellant's income, are those filed for the tax years 1944 and 1945. In '44 the appellant reported a taxable income of $8,057.82, and in '45 a taxable income of $4,350.69. When investigation was begun by agents of the Treasury, they were unable to find adequate records disclosing receipts of income by the appellant. The investigators then undertook to establish his income by the so-called "net worth" method. This involved fixing a base from which increases in the taxpayer's assets could be estimated by examination of bank accounts, real estate records, showing investments, the books of stockbrokers indicating purchase of securities, and so on. This method of determining the liability of a taxpayer (either civil or criminal) is an established practice of the government and has received the sanction of courts in many cases. It is now too late for a taxpayer who fails to keep or preserve records to complain. To be dependable, however, the method requires a starting point, reasonably well established as accurate.

The investigators in the present case began their inquiry into the appellant's asset situation with the year 1938, the first year in which he had filed a tax return. He reported income in that year of $3,156.90. Reviewing his activities prior to that year, their inquiry disclosed that the appellant had graduated from the University of Michigan in the year 1934; that from then until June, 1935, he was an interne at Providence Hospital receiving a compensation of $20 per month in addition to room and board; that for the next year until June, 1936, he was at the University of Minnesota Hospital where he received his room and board but no money; that from 1936 to 1937 he was at the John Seeley Hospital of the University of Texas, where he likewise received no money. He began the practice of his profession at Royal Oak, Michigan, shortly after finishing his Texas internship. While attending medical school his brother, Louis, a surgeon and physician, loaned him between $3,500 and $4,000, which was repaid in small amounts over the period 1937 to 1941. When the appellant came to Royal Oak he lived for a year and a half with his brother Edward, who loaned him $2,000 in 1937, and later other sums, so that by 1943 he owed him somewhere between $5,500 and $6,000. This brother took title to real estate purchased by the appellant, as security for loans, and they were not fully paid off until 1944. All of these facts were either stipulated or presented to the jury by uncontroverted evidence. From them the Treasury agents deduced that at the end of 1937 or the beginning of 1938, the appellant had no assets but was in debt in the amount of $4,858.64, and that at the end of 1938, during which he had a net worth increase of $4,525.70, the net worth

of his assets was $332.94 less than zero. Thus was established by substantial evidence, a base for computation of net worth increases. It is not destroyed by argumentative speculations not supported by evidence, that the appellant may have had other substantial assets.

From 1938 on, according to the computations of the Treasury agents, the appellant's practice materially increased, as did the net worth of his assets. In an exhibit reflecting their computations and indicating the reported income and net worth increases, the table shows a net worth at the end of the tax year 1945, of $128,938.52. It is here reproduced and set forth in the margin.[1]

■■■ The transactions upon which this computation was made are all sustained by evidence. They were not successfully controverted. It is true that appellant's counsel made vigorous attacks upon the accuracy of the computation. At best it was, of course, but an estimate, but as an estimate it was entitled to the consideration of the jury because based on substantially the entire evidence in the record. United States v. Johnson, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546; Bell v. United States, 4 Cir., 185 F.2d 302. The principal attack of the appellant upon the evidence which sustains this computation is twofold. The first is the challenge to the accuracy of the appellant's net worth, or lack of it, at the base period, and secondly is the contention that each item of evidence must be so fully and accurately established that it permits no reasonable doubt as to the fact upon which reliance is placed. As to the first contention, all of the evidence, and that includes testimony of reluctant witnesses permitted to be cross-examined as hostile, points with great persuasiveness, if not indeed conclusively, that when the appellant began his professional practice in 1937 he was without assets and heavily in debt. As to the second, the appellant appears to confuse the function of the court with that of the jury. In United States v. Valenti, 2 Cir., 134 F.2d 362, 364 certiorari denied 319 U.S. 761, 63 S.Ct. 1317, 87 L.Ed. 1712, Judge Clark made a careful study of the applicable rule, and we accept fully his conclusions. "The requirement of proof beyond a reasonable doubt is a direction to the jury, not a rule of evidence; it operates on the whole case, and not on separate bits of evidence each of which need not be so proven; and it cannot be accorded a quantitative value other than as a general cautionary admonition (citing cases). It is the court's function to decide whether evidence is competent to justify certain inferences; it is not the court's function to decide which of various inferences should be drawn."

The appellant's reliance upon Bryan v. United States, 5 Cir., 175 F.2d 223 and United States v. Fenwick, 7 Cir., 177 F.2d 488 is of little avail to him because there was no such comprehensive investigation either as to the net assets at the base period or subsequent increases as was here undertaken. Moreover, in the Bryan case, a vigorous dissent weakens the conclusion there arrived at, and the Fenwick case appears to be in conflict with United States v. Hornstein, 7 Cir., 176 F.2d 217, decided by the Seventh Circuit but a few months prior to Fenwick. Judge Miller of this court, writing in Brodella v. United States, 6 Cir., 184 F.2d 823, had no difficulty in distinguishing the Bryan and Fen-

| 1. Year | Taxes Paid | Income Reported | Net Worth Increases | Net Worth |
|---|---|---|---|---|
| 1937 | .... | .... | .... | (4,858.64) |
| 1938 | 14.28 | 3,156.90 | 4,525.70 | (332.94) |
| 1939 | 28.82 | 3,948.76 | 5,171.89 | 4,838.95 |
| 1940 | 220.17 | 7,238.74 | 5,590.01 | 10,428.96 |
| 1941 | 248.94 | 4,412.25 | 22,891.05 | 33,320.01 |
| 1942 | 1,182.76 | 7,109.30 | 18,286.74 | 51,606.75 |
| 1943 | 1,417.10 | 5,313.74 | (2,778.21) | 48,828.54 |
| 1944 | 1,904.08 | 8,057.82 | 20,166.21 | 68,994.75 |
| 1945 | 812.67 | 4,350.69 | 59,943.77 | 128,938.52 |
| | $5,828.82 | $43,588.20 | $133,797.16 | |

wick cases from cases involving facts similar to those here produced.

■ The defensive strategy of the appellant was to remain silent and challenge the government to prove its case. This, of course, he had a right to do but he now urges, upon appeal, that the government had an obligation to establish beyond reasonable doubt that there were no resources other than current taxable income with which to make the substantial expenditures of the prosecution years. In other words, his counsel asserts that he may have had a legitimate "nest egg," accumulated in previous years, with which to make such investments, and, impliedly, out of unexplained but untaxable income. The argument borders on the fantastic. If there were such sizable "nest egg" some proof would certainly have been available other than the testimony of the defendant himself. While the government is not required to prove a negative or to refute all possible speculation as to the source of the appellant's asserted funds, Rossi v. United States, 289 U.S. 89, 91, 53 S.Ct. 532, 77 L.Ed. 1051; Jelaza v. United States, 4 Cir., 179 F.2d 202; United States v. Hornstein, supra; Bradford v. United States, 5 Cir., 130 F.2d 630, it went far beyond its reasonable obligation in that respect. During most of the pre-prosecution years the appellant was substantially indebted to his brothers and to his divorced wife for the balance of an alimony settlement. His income tax returns from 1938 to 1943 inclusive, showed no such income, taxable or untaxable, to warrant the inference that such "nest egg" had been created and maintained. The jury was warranted in assuming that none existed, or if created by withholding of income from prior or current tax returns, it established a course of concealment and tax evasion. If this evidence stood alone it would have supported the jury's verdict.

■ But there was more,—much more, to establish not only evasion but wilfulness as its inescapable characteristic. When the investigation by Treasury agents disclosed that the estimated increases in the appellant's net worth would lead to the inference that he had failed to disclose in his returns approximately $90,000 of income, the appellant undertook to explain that he had received $50,000 in 1942 as a gift from a prominent citizen of Royal Oak, Michigan, and that this was untaxable. There were five different versions at five different times, of the reasons why the gift was made, including the explanation that the giver had been taking liberties with the appellant's wife. To the investigators he repeatedly refused to disclose the name of the donor, but to the accountant who had worked on the appellant's tax returns and who had also assisted the agents in their investigation, he did disclose the alleged source of the gift. This made it possible for the government to completely shatter an expected defense along this line. Its evidence in this respect was vigorously challenged at the trial and is assailed here. It is urged that it consists of extra-judicial admissions, was therefore inadmissible and may not support a verdict of guilt. The rule applies, however, only to extra-judicial admissions when they stand alone, unsupported by other evidence. Here they but reinforce the permissible inferences to be drawn from the evidence submitted at the trial.

■ There was evidence of the destruction of pertinent books and records, and of the defendant's habit of dealing in large amounts of cash. He had at his home several vaults and a number of safes in one of which more than $22,000 in currency was kept when the special agent visited the appellant's home in 1946. He paid $41,000 upon two occasions in 1945, to a broker's agent for the payment of stocks. These payments were in cash, mostly in currency of small denominations, transferred in the bedroom of his brother's house, wrapped in a newspaper or a paper bag. The evidence of deliberate and wilful evasion seems to us overwhelming.

■ The accountant's testimony was not privileged. There is no evidence to show that the accountant, at the time he received and relayed the information to the investigators, was in the employ of counsel for the appellant, but even if so there is respectable authority that denies

him the privilege status. Himmelfarb v. United States, 9 Cir., 175 F.2d 924; 8 Wigmore on Evidence, 3rd Ed. § 2325.

Complaint is also made that the court was in error in declaring Helen Dennis and Edward Gariepy hostile witnesses and permitting their cross-examination, but Dennis was a confidential employee and Dr. Gariepy was the appellant's brother. It was to be expected that they would not testify willingly and it was within the reasonable discretion of the district judge to so classify them. We are unable to say that this discretion was abused.

Complaint is made of errors in the court's instructions to the jury. There is demonstrated here the conventional strategy of taking phrasing out of context and pointing to error. We have carefully examined the whole charge, and considering it as a whole, we are persuaded that the interests of the appellant were carefully safeguarded; that the jury was free to decide every issue of fact, and that in one important respect, at least, it was more favorable to the appellant than was required. Contentions not specifically adverted to have also been carefully considered. Experience teaches that where everything, no matter how unimportant, is emphasized, there is no emphasis, and a record and briefs of this character invite the exercise of caution lest something really important may be overlooked. Acceptance has entailed laborious scrutiny of an over-long record and study of many cases.

The judgment is affirmed.

Miller, Circuit Judge, dissented.