Mathews (Mike) **RUBINO,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 12359.

United States Court of Appeals
Sixth Circuit.

Oct. 20, 1955.

Joseph W. Louisell, Detroit, Mich. (John F. Noonan, Detroit, Mich., on the brief, Ivan E. Barris, Detroit, Mich., of counsel), for petitioner.

Stanley P. Wagman, Washington, D. C., H. Brian Holland, Ellis N. Slack, Hilbert P. Zarky, John J. Kelley, Jr., Washington, D. C., on the brief, for respondent.

Before ALLEN, MARTIN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

The United States Tax Court determined deficiencies against petitioner of $928.30 for the year 1944, $3,653.14 for 1945, and $16,922.94 for 1946, and added fraud and delinquency penalties under Sections 293(b) and 291(a) of the Internal Revenue Code, 26 U.S.C. The Tax Court sustained the Commissioner in finding that petitioner owned an interest in the Navahoe Building, Detroit, acquired in 1944, and also that in 1946 he invested $14,802.50 and $19,830.50 in Moss Music Company and Chester Music Company, respectively, and that these and other assets, in light of the record, established the correctness of the Commissioner's determination.

The principal legal question presented involves the validity of a net worth analysis of petitioner's assets during the taxable years based on a zero net worth calculation made by the internal revenue agents as of December 31, 1943.

It is undisputed that petitioner kept no books, had no bank account at any time, and by his own testimony had followed the trade of gambler in 1944 and 1945. He filed an income tax return for 1943 reporting income of $2,280 as an employee of Sam Lucido. It is undisputed that for several years petitioner had no income and the tax return for 1943 was the first he filed. He filed no further income tax return until the return for 1946, although he filed estimates of income for 1944 and 1945 and made payments in accordance with the estimates.

Since petitioner had no financial records, no bank account, and no business or trade bringing in regular income, the government was entitled to estimate his income on the basis of net worth. United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; Holland v. United States, 348 U.S. 121, 130, 131, 75 S.Ct. 127.

As to the Navahoe Building, the Commissioner determined that in 1944 petitioner had an increase in net worth of $4,618.42 arising from investment in this building, which was sold on land contract in January, 1944, to Grace Rubino, mother of petitioner, Rose Lucido, wife of Sam Lucido, and Alvera Massu, wife of George Massu. The amount of down payment of $11,750 provided for in the land contract was delivered to Sullivan, agent in the transaction, in the form of a certified check, but it does not appear either when the check was given or when the payment was completed. It was made in two installments. In 1951 a deed to the property was executed to the named purchasers, but not recorded. The Commissioner determined that while an interest in the Navahoe Building purported to have been purchased by Grace Rubino, the pro-rata amount paid as her share on the land contract during the year 1944, figured as $4,618.42, was defrayed out of funds given Grace Rubino by petitioner and the interest was either actually owned by petitioner or money for the purchase was supplied by him. From this transaction the internal revenue agents figured the amount of the payment, $4,618.42, as an increase of net worth as of December 31, 1944.

Grace Rubino died May 12, 1949. Petitioner contended that his mother bought the interest in the Navahoe Building with funds given her by petitioner's father, Dominic Rubino, who died in 1926. Dominic Rubino left no estate so far as shown by the records of the Probate Court. He filed no income tax returns for the years 1914 to 1926, inclusive. In May, 1925, he and Grace Rubino mortgaged their home for $1,800. Grace Rubino was in arrears on interest payments on the mortgage from 1933 to 1936 and made no payments on the principal from 1935 to 1937. The mortgage was paid and retired on August 17, 1942. There was no bank record of the payment. Petitioner claimed that the amount paid by his mother on the land contract was kept by her in the house. Grace Rubino filed income tax returns for 1944, 1945, and 1946, listing as income rentals from the property.

Under the record it was a fair inference that the amount of $4,618.42 credited to Grace Rubino in the land contract came from payments made by her on behalf of petitioner or out of funds given her by petitioner. While it is possible, as petitioner claimed, that Grace Rubino might have kept $4,618.42 in her stocking in her home for many years, as savings, either from personal earnings or from sums received from her husband, this is an issue of fact. The determination of the Commissioner and the Tax Court on this point was not clearly erroneous and must be sustained here. Petitioner had the burden of proof that the Commissioner's determination was incorrect, but this burden he did not sustain. He introduced no evidence as to his father's occupation, earnings, or assets, nor did he contend that his mother worked in any gainful occupation.

During part of the period involved petitioner had substantial cash assets, for he admitted having $7,500 cash on hand on December 31, 1945, and in January, 1946, he gave his wife, Marie Rubino, $5,000 in cash. In 1946 petitioner spent approximately $3,750 on two automobiles.

As to petitioner's investment in Moss Music Company and Chester Music Company, the record shows that on March 1, 1946, petitioner made a partnership agreement with Irwin B. Moss and Sam Lucido under the partnership name of Moss Music Company. The decision of the Tax Court as to the amount of $14,-802.50 contributed to this company by petitioner is supported by the testimony of Moss, the internal revenue agent, and the records of Moss Music Company. A written contract executed by the partners stated that "the said Irwin B. Moss, Sam Lucido and Mike Rubino have contributed capital in the total amount of ten thousand dollars ($10,000.00) in equal shares * * *." Petitioner denied that he paid any part of his share of $10,000 and stated that no money changed hands in the transaction. Copies of journal entries made from the ledger of Moss Music Company by the internal revenue agent in the presence of Moss and of his accountant and stated by Moss to have been checked by him and found to be correct are as follows:

3/1/46

\* \* \* \* \* \*

Capital invested by Sam Lucido and Mike Rubino 10,000.00

5/18/46

To record addition of Capital by Sam Lucido and Mike Rubino of $7,-660.00.

\* \* \* \* \* \*

7/6/46

To record additional capital of Sam Lucido and Mike Rubino of 10,-695.00

Deposited July 6, 1946.

\* \* \* \* \* \*

5/2/47

To record dissolution of partnership of Sam Lucido and Mike Rubino bought out by Irwin Moss of 29,-000.00 25,000.00 cash and promise to pay 4,000.00 balance.

\* \* \* \* \* \*

The ledger sheets of a checking account in the name of Moss Music Company at a Detroit bank completely corroborate the last three of these journal entries. On liquidation of the company Moss placed $25,000 cash in a drawer of his desk and notified Lucido and the money was removed.

In 1946 petitioner invested in another juke box company, together with Irwin Chester and Sam Lucido. Petitioner and Lucido owned a 75% interest in this business and were to split the profits 50–50. Chester testified that Lucido and petitioner contributed $10,000, that later $25,000 in cash was invested by Lucido and petitioner in equal amounts and that Lucido and petitioner furnished equal amounts to pay a bill of $4,700. He stated that the amounts contributed by Lucido and petitioner totalled approximately $38,000. The Commissioner determined that petitioner's investment in Chester Music Company in 1946 was half of the total, namely, $19,830.50. There being no books from which the Commissioner could determine petitioner's income and

no records of any kind, he calculated the income from the taxable years from an analysis of net worth which is printed in the margin.[1]

Petitioner's testimony with reference to these financial transactions is full of contradictions and inconsistencies. He reiterates that with reference to Moss Music Company and Chester Music Company he at no time paid any amount into the finances of either company. Later he testifies that he paid $25,000, which he says he secured from an attorney, Doc Polozker, who died before the trial. As to this loan petitioner stated that no note was signed, no security given, that he paid no interest, that the money was given to him in cash, wrapped in a newspaper, that he did not know the denominations, that he did not unwrap the money before he gave it to Sam Lucido. No receipt for repayment of the money was given in evidence. We think it was a reasonable inference that a practicing lawyer like Polozker, said to have been a former United States District Attorney, would not have made a loan of such amount without receiving a note and security. The Tax Court might reasonably infer that the story of this loan was untrue.

The Commissioner's determinations of fact are presumptively correct and, unless the Tax Court's decision upholding the Commissioner is clearly erroneous, it is conclusive. Thomas v. Commissioner of Internal Revenue, 6 Cir., 223 F.2d 83, 88; 26 U.S.C. § 1141; Rule 52 (a) Federal Rules of Civil Procedure, 28 U.S.C. Upon the same authority, the Tax Court's finding that all or some part of the deficiency in income tax for each of the years involved was due to fraud with intent to evade the tax under Section 293(b) of the Internal Revenue Code of 1939 is not clearly erroneous.

Petitioner contends that reversible error exists in the computation of net worth. The analysis states that there is an increase in net worth to the amount of $4,618.42 as of December 31, 1944. While no specific finding of a time when petitioner's net worth was zero is made, one of the internal revenue agents testified that necessarily a finding of zero net worth must have been made for 1943 if the full amount of the payment of $4,-

[1] Analysis of Net Worth

| | Year Ended December 31 | | |
|---|---|---|---|
| | 1944 | 1945 | 1946 |
| Cash in Bank—Marie Rubino .......... | | | $ 5,031.19 |
| Cash on Hand ........................ | | $ 7,500.00 | |
| *Investments* | | | |
| Moss Music ........................... | | | 14,802.50 |
| Chester Music Co. .................... | | | 19,830.50 |
| *Property* | | | |
| Navahoe Building ..................... | $15,666.67 | 15,666.67 | |
| Automobile: | | | |
| 1946 Buick Sedan .................... | | | 1,723.89 |
| 1946 Chrysler Sedan ................. | | | 2,056.10 |
| Total—Assets ..................... | $15,666.67 | $23,166.67 | $59,110.85 |
| *Liabilities:* | | | |
| Navahoe Bldg. ........................ | 11,048.25 | 5,899.86 | 4,814.33 |
| Net Worth ........................... | 4,618.42 | 17,266.81 | 54,296.52 |
| Net Worth Increase ................... | 4,618.42 | 12,648.39 | 37,029.71 |
| Add Living Expenses .................. | 3,000.00 | 3,000.00 | 3,000.00 |
| Income Taxes Paid ................... | 734.00 | 2,256.40 | 1,776.60 |
| Total ............................... | 8,352.42 | 17,904.79 | 41,806.31 |
| Less Income Reported ................. | None | None | 9,370.69 |
| Additional Income ................... | $ 8,352.42 | $17,904.79 | $32,435.62 |

.618.42 for the Navahoe Building is listed as net worth increase. Petitioner urges that this finding of zero net worth for December 31, 1943, is so at variance with the finding that the payment on the Navahoe land contract by Grace Rubino was made by petitioner or with funds secured from him, that for failure of accuracy in determining of opening net worth for the taxable year of 1944 the judgment must be reversed. Cf. Holland v. United States, supra, 348 U.S. 132, 75 S.Ct. 127; Thomas v. Commissioner of Internal Revenue, supra, 223 F.2d 89; Gariepy v. United States, 6 Cir., 189 F.2d 459, 461; Brodella v. United States, 6 Cir., 184 F. 2d 823, 825.

■ As contended by the government, in petitioner's gambling business an increase in assets might arise within a short time. We take judicial notice that a gambler may receive thousands of dollars in one day. It was thus entirely possible, depending upon petitioner's luck, that his assets in January, 1944, increased enough for him to supply his mother with the funds necessary to carry her share of the land contract. It is also true that, while the land contract for the building was dated January 20, 1944, the down payment was given in two installments and the date of these payments is not shown. However, as declared in Gariepy v. United States, supra [189 F. 2d 461], the net worth method involves "fixing a base from which increases in the taxpayer's assets" may be estimated. The fatal point in the government's case with reference to fixing the base of zero net worth is that it has to fix this base at a time prior to the making of the land contract in order to establish that the interest in the Navahoe Building was paid for by petitioner and not by his mother. But the Commissioner cannot have his cake and eat it. The finding that the Navahoe Building was paid for by petitioner is not clearly erroneous; but it squarely conflicts with the finding that the down payment of $4,618.42 constitutes an increase in net worth over 1943 in which net worth was declared by the internal revenue officers to be zero.

■ Moreover, the finding is contradicted by petitioner's tax return for 1943 whose accuracy is not contested. This return listed income of $2,280. A fair inference is that this was spent in living expenses. The Commissioner figured living expenses at $3,000 in 1944 and increased net worth by that amount. But he cannot rightly ignore living expenses in 1943 as constituting an item of net worth and add them to net worth in 1944. As to the ownership of the assets listed, the Tax Court and the Commissioner should be sustained. Information concerning his mother's sources of income could have been supplied only by petitioner. He has not sustained his burden of showing that the conclusion as to his ownership of an interest in the Navahoe Building and in Moss Music Company and Chester Music Company is incorrect. But the calculations for all of these years are based on the premise not established with the "reasonable certainty" required, Holland v. United States, supra, 348 U.S. 132, 75 S.Ct. 127, that petitioner had a zero net worth as of December 31, 1943. This conclusion requires a recomputation of the deficiencies and penalties.

■ Other contentions may be disposed of briefly. The revenue agent refused to answer a question relating to a conversation with Sam Lucido or George Massu concerning the Navahoe Building upon the ground that Section 55(f) (1) of the Internal Revenue Code, 26 U.S. C.A., and Treasury Regulations 12, Article 80, forbade him to disclose such information. The claimed error, if it existed, was not prejudicial, for no offer of proof was made.

■ The fact that the Tax Court in its opinion referred to the exhibit which embodied copies of entries from the ledger of Moss Music Company did not constitute reversible error. Although the exhibit was admitted for the limited purpose of showing the basis of the net worth calculations, we think it was clearly admissible for other purposes. Moss, the manager of Moss Music Company, testified that the ledger entries were accurate. Petitioner's objection was that

the copies of these entries made by the internal revenue agent in the presence of Moss and his accountant were not the best evidence. It was shown in substance that the books were lost. The entries in question were made in the course of business and the copies made by the internal revenue agent were checked with the ledger by Moss himself. The bank records of the checking account of Moss Music Company showed that three substantial items of the journal entries were entirely correct. No reversible error can be predicated upon the use of this evidence. The 90-day letter to Sam Lucido was clearly irrelevant and its exclusion was not error.

With the exception of the calculation of net worth and the computations based thereon, the decision of the Tax Court is sustained by the record and is affirmed. The case is remanded to the Tax Court for recomputation of petitioner's net worth and for recalculation of ordinary income taxes and fraud and delinquent penalties in accordance with this opinion.

Goodrich, Kalodner, and McLaughlin, Circuit Judges, dissented.