Francis Nikiel v. Commissioner.
Nikiel v. Commissioner
Docket No. 4776-67.
United States Tax Court
T.C. Memo 1969-141; 1969 Tax Ct. Memo LEXIS 155; 28 T.C.M. (CCH) 735; T.C.M. (RIA) 69141; July 2, 1969, Filed *155 Francis Nikiel, pro se, 429 S. Ogden St., Buffalo, N. Y. David H. Julian, for the respondent. IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: Respondent determined a deficiency of $4,748.58 in petitioner's income tax for the taxable year 1964 and additions thereto pursuant to sections 6653(a) and 6654 in the amounts of $237.43 and $49.42, respectively. The primary issue for our decision is whether the respondent erred by not allowing the petitioner an alleged $20,000 lease cancellation payment which the petitioner claimed as part of his basis in computing the amount realized on a sale of real estate in the taxable year 1964. We must also decide whether respondent erred in imposing additions to tax for the taxable year 1964 pursuant to sections 6653(a) and 6654. Findings of Fact Some of the facts have been stipulated by the parties and are incorporated herein, along with any exhibits attached thereto, by this reference. Francis Nikiel, the petitioner herein (hereafter referred to as either Francis or petitioner), resided at 429 South Ogden Street, Buffalo, N. Y., at the time the petition 736 herein was filed. Petitioner filed his Federal income tax return for the taxable *156 year 1964 with the district director of internal revenue at Buffalo. On March 3, 1964, petitioner sold a parcel of real estate located at 2360 Clinton Street in the city of Cheektowaga, N. Y. The sales contract specified a selling price of $60,000, $500 of which had been paid to the petitioner as a deposit, in 1963. Petitioner's basis in the property at the time of sale totaled $14,180.10, determined as follows: Cost basis on 10-26-56
$ 7,074.27
Real estate taxes and mortgage in- terest capitalized, 1956-1964 7,888.68
$14,962.95
Less: Taxes reimbursed at sale 782.85
$14,180.10 Commissions and selling expenses in the amount of $4,000 were paid to the Saperston Realty Company on March 3, 1964 - the closing date. A warranty deed was executed by petitioner in favor of the purchaser. On his 1964 tax return, petitioner listed the gain from the sale of this parcel of real estate as $10,000. [1] *157 Petitioner arrived at this gain figure by the following computation: Gross Sales Price
$60,000
Less:
1. Deposit received in 1963
$ 500
2. Cost of equipment used to develop property
7,000
3. Real estate taxes and mort- gage interest capitalized, 1956-64
12,300
4. Lease cancellation payment made to lessee, John Nik- iel, petitioner's brother, as consideration for the cancellation of a 99-year lease on the premises 20,000
Total deductions
[2] 39,800 Net gain from sale
$20,000
Less: Section 1202 deduction 10,000
Gain reported
$10,000 The respondent in his deficiency notice denied, inter alia, the deduction from the sales price the amount attributable to the alleged $20,000 lease cancellation and computed gain from the parcel of real estate as follows: Capital gain - sales price at 3-3-64 of 7.86 acres of land at 2360 Clinton Street
$60,890.78
Cost basis at 10-26-56
$7,074.27
Real estate taxes and mortgage interest capi- talized - period 1956- 1964
7,888.68
Less - taxes reimbursed at sale
(782.85)
Add - Sale commission expense 4,000.00
Costs of sale 18,180.10
Gain realized
$42,710.68
Gain taxable at 50 percent thereof
$21,355.34
*158 Based in part on the above computation, respondent determined a deficiency in the amount of $4,748.58 and additions to tax under section 6653(a) and 6654 [3] in the amounts of $237.43 and $49.42, respectively. Petitioner, at the time of the sale described above, owned several other parcels of land in the Buffalo, N. Y. area. He also leased various premises, one of which was owned by his brother, John Nikiel (hereafter sometimes referred to as John). Petitioner, from all indications, was not lacking in business experience and judgment. In addition to handling his own investments, he also managed financial matters for John and for another brother, Joseph. Petitioner and John allegedly entered into the leasehold arrangement disputed by the respondent sometime in 1957. The terms of the lease required an annual rental of $100 for the 99-year duration of the alleged leasehold arrangement. No rent was received by the petitioner subsequent to a $100 payment tendered by John in 1957. Certain improvements made by John, as lessee, along with certain annual expenditures which he incurred were treated by petitioner as payment in lieu *159 of rent. The leasehold agreement was never recorded and was allegedly lost by the time the trial herein took place. John paid no Federal income tax during the taxable year 1964. Losses which he incurred in that year were so great as to offset all of his otherwise taxable income, including the $20,000 lease cancellation 737 payment allegedly received from Francis. Also in 1964, John paid back taxes on realty in the amount of $20,000. During 1964, a check payable to the order of Francis Nikiel in the amount of $5,309 was endorsed: "Francis Nikiel, for Deposit, John Nikiel." Opinion Leasehold Agreement The primary question in this case is one of fact. Did a leasehold agreement exist between petitioner and his brother; and if such an agreement did exist, was $20,000 paid by petitioner to his brother as consideration for the cancellation of the leasehold agreement? Our resolution of this question has been considerably hampered due to the garbled and disjointed nature of the testimony adduced during the trial of this case. With a strong regard for the right of any taxpayer to represent himself in an action before this Court, it is nevertheless our observation that petitioner, in a case *160 such as this where a reasonably large deficiency is in dispute, would have been well advised to place the presentation of his case in the hands of an experienced and well trained practitioner. The burden of proof required of a taxpayer who appears pro se is no less weighty than that which is required of the taxpayer who is represented by a competent practitioner admitted to practice before this Court. Wallis v. Commissioner, 357 F. 2d 313 (C.A. 10, 1966), affirming a Memorandum Opinion of this Court. In both instances, the petitioner has the burden of proving, by a preponderance of the evidence, that the Commissioner has erred. Rule 32, Tax Court Rules of Practice. In satisfying this burden, the testimony adduced at trial plays no minor role. Having to deal with the record as it is rather than what it might have been, we have carefully considered the testimony of both petitioner and his brother, as well as the other evidence placed before us in an effort to determine whether the presumption of correctness attached to respondent's deficiency assessment has been overcome by the weight of petitioner's evidence. The presumption that the Commissioner's determination is correct is one of *161 law and when evidence is introduced sufficient for the Tax Court to base a finding contrary to the determination, the presumption disappears. Petitioner's evidentiary task, therefore, is (a) to prove the existence of the disputed leasehold agreement and (b) to prove that a $20,000 payment was made to the lessee, his brother, as consideration for the cancellation of the agreement. [4]
The best evidence of the existence of the lease in question is the leasehold document itself. [5] *162 However, the production of such a document will be excused and other evidence will be permitted if it is established that the document is unavailable or lost and that a diligent search has been made to locate its whereabouts. See Sellmayer Packaging Co. v. Commissioner, 146 F. 2d 707 (C.A. 4, 1944), affirming a Memorandum Opinion of this Court, where the following language is used by the Court of Appeals: It is admitted that the sales slips were the original records of the transactions in issue and that under the well established rule of evidence, the accountant's secondary testimony was not admissible unless the court was satisfied that the original records had been lost and could not be found after diligent search or had been destroyed without fault or fraudulent design on the taxpayer's part. * * * See also, Mathews Rubino v. Commissioner, 226 F. 2d 291 (C.A. 6, 1955), affirming per curiam and remanding for recomputation a Memorandum Opinion of this Court, in which taxpayer's objection that copies of ledger entries did not constitute the best evidence of such entries was rejected inter alia on the ground that the original books were shown in substance to have been lost. Petitioner, in the instant case, has failed to produce the leasehold document evidencing the agreement which he and his brother purportedly entered into in 1957. Instead, petitioner claims that, though such a document did *163 once exist, its whereabouts have been unknown since 1966 when it was 738 allegedly lost by a local internal revenue service agent with whom it had been entrusted. Petitioner, however, has not offered a scintilla of evidence to support his statement that such a document was ever placed in the hands of one of respondent's agents. Petitioner might have supported his contention by producing either a photostatic copy of the instrument or a signed receipt evidencing its receipt by the internal revenue service agent to whom it was allegedly given. This he has failed to do. Nor has he offered any proof indicating that he has tried to locate the person who was last in possession of this instrument. Lastly, the very existence of such an instrument - irrespective of how it could have been lost at a later time - is put in serious doubt when it is established, as was here the case, that the instrument, itself, was never recorded. Notwithstanding the above, petitioner would have us find in his favor on the grounds that his uncontroverted statements regarding (a) the existence of the leasehold agreement and (b) the payment of the cancellation premium to his brother John have been corroborated by *164 the latter's testimony. We cannot agree with petitioner. In so stating, we recognize that we may not arbitrarily disregard the unimpeached, competent and relevant testimony of a taxpayer which is uncontradicted. By the same token, we do not lose sight of the fact that this Court, as the trier of fact, is entitled to weigh evidence "against a projected background of its reasonableness and logical consistency, the conduct of the witnesses, the attendant circumstances, and the stipulated facts." Archer v. Commissioner, 227 F. 2d 270 (C.A. 5, 1955), affirming a Memorandum Opinion of this Court. In this case we are faced with an intrafamily transaction between two brothers and what would appear to be an attempt on the part of one to shift income to the other. As we have so often stated in the past, transactions of this variety require the closest scrutiny to determine whether such family interaction is in economic reality what it appears to be on its face. See, e.g., Jeannette W. Fitz Gibbon, 19 T.C. 78 (1952). Under such circumstances, for the evidence to preponderate in favor of the petitioner, it must be thorough, reasonable and credible in the first instance. In our opinion the unsupported *165 though consistent statements of the parties to the transaction in issue is not enough in a case such as the one at bar. Aside from the testimony of the petitioner and his brother, we have been presented with no evidence which supports either the existence of a leasehold agreement or the fact that it was later lost. Even if we were to assume arguendo that in the course of events a legal document such as a leasehold agreement might find its way to the Internal Revenue Service where it might be misplaced, we believe that it goes against the the grain of reasonableness to also assume that (a) the document - though it purported to be a lease of property for 99 years - had never been recorded; (b) a receipt was not requested from the Internal Revenue Service; (c) the taxpayer, an experienced real estate holder, would have forgotten to make a photostatic copy of the instrument; and (d) the testimony or deposition of the person to whom it was entrusted could not, without explanation, be obtained to support the taxpayer's allegations. Furthermore, if petitioner leased out the property to his brother at a rental of $100 a year, where are petitioner's past tax returns indicating the receipt of *166 rent from the Clinton Street property in the abovestated amount? Under these circumstances, we cannot say that petitioner has established by a preponderance of the evidence that a lease was in force at the time the $20,000 payment was made. Hence, even if petitioner were able to prove that he "gave" his brother $20,000 in the year of sale, petitioner could not by such proof hope to transfer the taxability of such amount to his brother, John. Compare Lucas v. Earl, 281 U.S. 111 (1930), Helvering v. Horst, 311 U.S. 112 (1940), and countless other cases which have denied income splitting under circumstances analogous to the facts of this case. With this in mind, we believe that the question of whether such an amount was actually received by petitioner's brother in the year of sale has been rendered moot. We accordingly hold for the respondent. 739 Additions to Tax (A) 6653(a): With respect to the question of whether a negligence penalty under section 6653(a) [6] was proper, respondent on brief states the following: Petitioner presented no evidence with respect to the issue of negligence. Therefore, respondent relies upon his presumption of correctness that the addition to the tax under *167 section 6653(a) was properly imposed for the year 1964. We agree with respondent. Petitioner has the burden of proving that respondent's imposition of a negligence penalty was erroneous. David Courtney, 28 T.C. 658, 669 (1957). Therefore, in the absence of any evidence rebutting the presumptive correctnesness of the addition to tax, we must hold that respondent's determination was not erroneous. See Percy S. Winfield, an unreported case ( C.A. 7, 1967, 19 A.F.T.R. 2d 627), affirming a Memorandum Opinion of this Court, certiorari denied 389 U.S. 851 (1967); James W. England, Jr., 34 T.C. 617, 623 (1960). (B) 6654: The final issue for decision is whether petitioner is liable for an addition to tax *168 for underpayment of estimated tax for the year 1964. Petitioner contends that his failure to make the estimated tax payments in question was attributable to mitigating factors which prevented him from accurately estimating his income during the taxable year 1964. In short, petitioner contends that throughout 1964 he was, by virtue of the warranty deed which accompanied the conveyed property, obligated to cure any defects which might have appeared after the property was conveyed. As a result of this ambulatory obligation, petitioner argues that his gain from the sale of property could not be determined during the taxable year 1964. We cannot agree with petitioner. However, even if we were to assume arguendo that there is merit to petitioner's contentions, we still could not resolve this issue in his favor. The pertinent provisions of section 6654 and those regulations promulgated thereunder which are also herein pertinent are set forth in the margin.[7] *170 *171 *172 As we said in 740 Estate of Barney Ruben, 33 T.C. 1071, 1072 (1960), "This section has no provision relating to reasonable cause and lack of willful neglect. It is mandatory and extenuating circumstances are irrelevant." Only if petitioner *169 shows that his case comes within one of the exceptions provided in subsection (d) can he be excused from payment of a penalty under section 6654. John P. Reaver, 42 T.C. 72 (1964). This he has not shown and respondent's determination may not, therefore, be overturned. Decision will be entered for the respondent. Footnotes
1. This amount, without explanation, appears on line 6 of part II of petitioner's return for the taxable year 1964. However, it appears that this figure was never carried forward to page 1 of petitioner's return and was, therefore, never made a part of the "Total income" computation which appears on page 1 at line 9. 2. Petitioner apparently rounded to $40,000 the "Total deductions" figure of $39,800 shown above. Additionally, petitioner did not deduct from the gross sales price attorney's fees in the amount of $4,000. This omission was apparently by design in that petitioner wanted to "build up" his 1964 income so that he could qualify as a nursing home operator.↩
3. All statutory references are to the Internal Revenue Code of 1954.↩
4. The question of whether the transaction in issue, if it is shown to have taken place, was conducted at arm's length was not raised by respondent in his pleadings. It, therefore, need not be considered in this opinion.↩
5. See Laurence F. Casey, 2 Federal Tax Practice, par. 8.10, p. 216, and the cases cited thereunder: Where a material fact is normally provable from books of account or other documentary evidence, the best evidence rule is consistently applied in the Tax Court to require production of such proof.↩
6. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c) (1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩
7. SEC. 6654. FAILURE BY INDIVIDUAL TO PAY ESTIMATED INCOME TAX. (a) Addition to the Tax. - In the case of any underpayment of estimated tax by an individual, except as provided in subsection (d), there shall be added to the tax under chapter 1 for the taxable year an amount determined at the rate of 6 percent per annum upon the amount of the underpayment (determined under subsection (b)) for the period of the underpayment (determined under subsection (c)). * * * (d) Exception. - Notwithstanding the provisions of the preceding subsections, the addition to the tax with respect to any underpayment of any installment shall not be imposed if the total amount of all payments of estimated tax made on or before the last date prescribed for the payment of such installment equals or exceeds whichever of the following is the lesser - (1) The amount which would have been required to be paid on or before such date if the estimated tax were whichever of the following is the least - (A) The tax shown on the return of the individual for the preceding taxable year, if a return showing a liability for tax was filed by the individual for the preceding taxable year and such preceding year was a taxable year of 12 months, or (B) An amount equal to the tax computed, at the rates applicable to the taxable year, on the basis of the taxpayer's status with respect to personal exemptions under section 151 for the taxable year, but otherwise on the basis of the facts shown on his return for, and the law applicable to, the preceding taxable year, or (C) An amount equal to 70 percent (66 2/3 percent in the case of individuals referred to in section 6073(b), relating to income from farming or fishing) of the tax for the taxable year computed by placing on an annualized basis the taxable income for the months in the taxable year ending before the month in which the installment is required to be paid. For purposes of this subparagraph, the taxable income shall be placed on an annualized basis by - (i) multiplying by 12 (or, in the case of a taxable year of less than 12 months, the number of months in the taxable year) the taxable income (computed without deduction of personal exemptions) for the months in the taxable year ending before the month in which the installment is required to be paid, (ii) dividing the resulting amount by the number of months in the taxable year ending before the month in which such installment date falls, and (iii) deducting from such amount the deductions for personal exemptions allowable for the taxable year (such personal exemptions being determined as of the last date prescribed for payment of the installment); or (2) An amount equal to 90 percent of the tax computed, at the rates applicable to the taxable year, on the basis of the actual taxable income for the months in the taxable year ending before the month in which the installment is required to be paid. § 1.6654-1. Addition to the tax in the case of an individual. (a) In general. (1) Section 6654 imposes an addition to the tax under chapter 1 of the Code in the case of any underpayment of estimated tax by an individual (with certain exceptions described in section 6654(d)). This addition to the tax is in addition to any applicable criminal penalties and is imposed whether or not there was reasonable cause for the underpayment. * * * [Emphasis supplied.]