**UNITED STATES of America**

**v.**

**Harold John ADONIS, Appellant.**

**No. 11358.**

United States Court of Appeals, Third Circuit.

Argued Feb. 7, 1955.

Decided March 28, 1955.

Joseph Keane, Jersey City, N. J. (Milton, McNulty & Augelli, Jersey City, N. J., William E. Bannon, Jersey City, N. J., on the brief), for appellant.

Frederick B. Lacey, Asst. U. S. Atty., Newark, N. J., Raymond Del Tufo, Jr., U. S. Atty., Dist. of New Jersey, Newark, N. J., for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

A jury has found the appellant, Harold Adonis, guilty of criminal income tax evasion in violation of Section 145(b) of the Internal Revenue Code, 26 U.S.C. 145(b). The specific charge of the indictment is that for the calendar year

1948 Adonis filed a false and fraudulent income tax return for himself and his wife. The defense offered no evidence but stood on its contention that the government's proof was inadequate in law and in fact.

The most difficult matter on this appeal is one of the problems characteristic of tax evasion cases in which the net worth-expenditure method of proof is employed. To make the present issue clear, we will first state those elements of the government's case which were quite adequately proved and then inquire what more, if anything, had to be evidenced to complete a showing sufficient for jury consideration.

First, it was shown, consistent with appellant's 1948 tax return, that he was a salaried employee of the State of New Jersey and that he received small additional compensation from two other sources. His total 1948 income as reported for tax purposes was $7304.77. It is conceded that no additional income was derived from the reported sources.

Second, there was a showing of the appellant's expenditures in 1948. About $4000 of routine living expense was proved. In addition it was shown that appellant bought a parcel of land in March, 1948 and, during the ensuing months, built and furnished a home on the site, paying for this enterprise during the taxable year amounts aggregating $44,627.61. The evidence of the payment of this much money in 1948 for land, building and furnishings was clear, precise and uncontroverted.

Third, the government put in evidence the details of an elaborate investigation by its agents into the life and financial history of the appellant through December 31, 1947 for the purpose of determining what assets were available to him at the beginning of the taxable year. This investigation resulted in a calculation of the appellant's net worth on December 31, 1947 as $3,342.85. This conclusion was consistent with a history of small salaried jobs, very modest living, very small bank accounts and such exigency that as recently as 1946 appellant's wife found it expedient to leave her baby in the custody of an aunt while she accepted employment at a salary of $30 per week.

Fourth, the government proved a diligent search for loans, inheritances, gifts and any other potential sources of nontaxable receipts in 1948 which might have supplied the large sums expended by appellant on his home building project. In this connection, although appellant elected to stay away from the investigators who sought to interrogate him about his 1948 income, the investigation covered all appellant had said or was reported to have said from time to time to other people in explanation of his ability to finance a very expensive 1948 project, so out of line with his apparent circumstances. This line of evidence was such as to warrant a conclusion by a jury that all reasonable inquiry had been made without discovery of any credible evidence of substantial nontaxable receipts during 1948.

This brings us to the area of controversy. What more than the case already outlined had to be shown as a matter of law, and what more was shown in fact, to justify submitting to the jury the question whether the large excess of appellant's 1948 expenditure over the aggregate of his year-beginning net worth and reported 1948 income represented unreported 1948 taxable income?

In the first three paragraphs of the opinion of this court in U. S. v. Caserta, 1952, 199 F.2d 905, 906, Judge Goodrich discussed cases relevant to this question and concluded that, absent countervailing evidence, nothing more than such proof as has been outlined above need be shown to make it a jury question whether proven expenditures substantially greater than disclosed income and financial resources included unreported current income. However, we cannot rest there because, in a series of cases decided December 6, 1954, the Supreme Court has given us new authoritative guidance which has significance for this problem. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127; Fried-

berg v. United States, 348 U.S. 142, 75 S. Ct. 138; Smith v. United States, 348 U. S. 147, 75 S.Ct. 194; United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186. The appellant properly urges that for present purposes the most important pronouncement in these very recent decisions is the following language of the Holland case:

> "Increases in net worth, standing alone, cannot be assumed to be attributable to currently taxable income. But proof of a likely source, from which the jury could reasonably find that the net worth increases sprang, is sufficient * * * ; here the disclosed business of the petitioners was proven to be capable of producing much more income than was reported and in a quantity sufficient to account for the net worth increases." 348 U.S. at page 138, 75 S.Ct. at page 136.

The Court seems to be saying that such proof as we already have described in the present case, standing alone, is not enough. It is deemed unfair to draw a decisive inference against the taxpayer solely from the fruitlessness of the government's search for a source of the large sum of money actually spent, even though on the evidence it seems clear that the taxpayer must have obtained new funds from somewhere during the taxable year. It may not be assumed merely from the government's inability to find any source of non-taxable receipts that the funds acquired during the taxable year are taxable income. However, under the doctrine of the Holland case, "proof of a likely source", without evidence of how much that source yielded, is sufficient additional evidence to justify the inference the government seeks to create.

█ But the Court does not say that such proof of a likely source is the only additional evidence which will suffice to establish the government's case in a situation of this kind. And we do not believe that the Court intended such an implication. For, in logic, other items of proof may have equal or greater probative value as circumstantial indication that the newly available funds were taxable income.

We believe the additional evidence in this case had such probative value. The government undertook to convince the jury, first, that the appellant had made considered statements identifying particular sources from which he claimed to have obtained specific large non-taxable sums during 1948 and, second, that he clearly had not received any such sums from those sources. It is argued that if the jurors were convinced that the taxpayer had thus wilfully fabricated an account of current non-taxable receipts to explain his 1948 affluence they might reasonably infer that such conduct was an effort to conceal the fact and real sources of taxable gain in that year. It is this logical inference from the taxpayer's own wilful misrepresentation upon which the government relies here to supply the evidentiary requirement which in other situations is filled by an inference from an affirmative showing of some likely source of income.[1] Accordingly, we analyze the evidence to see whether there was a clear and impressive showing that the appellant wilfully misrepresented the source from which he obtained large amounts of money in 1948.

The cornerstone of this proof was undisputed evidence of testimony given by the appellant himself in a judicial proceeding in Holland in 1951. The nature of this proceeding was not identified, but only because the appellant took the position that this information might prejudice his case in the view of the jury. It was shown that in the Dutch proceeding the appellant was asked the source of the large sum which he expended for a home in 1948. He stated that the money for the land was supplied by

---

[1]. It is to be noted that this is not a situation in which the government relies upon an admission, which may require corroboration. The statement of the defendant is proved as a relevant fact. Independent evidence of its falsity is then introduced to show the significance of the statement.

his mother as a contribution. He said that the construction of the house cost about $38,000 of which $11,000 was obtained from a friend named Lambrew and evidenced by a mortgage, $21,000 was obtained from another friend, a Mrs. Navarro, and $1,700 represented his own savings available in 1948. He also spoke of $4000 of savings in 1949, but that item is not relevant to the present controversy over 1948 taxes.

The government then offered a large amount of testimony calculated to convince the jury that this entire accounting was a wilful fabrication. As to appellant's mother, a widow, it was shown that she died at the age of 79 in February, 1948, about a month before appellant began negotiations for the purchase of a home site. For several years this elderly lady had lived first with a son, other than appellant, and, at the time of her death, with a daughter. It was also shown that in her advanced age she was supported by the child with whom she lived, and made no contribution to household expenses. Inquiry addressed to the members of her family, other than appellant, showed that they knew of no income or substantial savings under her control. She reported no gifts for tax purposes and left no estate. On such evidence it is difficult to see how the jury could have avoided the conclusion that the appellant was guilty of a deliberate falsehood in naming his mother as the source of the $5,000 with which he purchased a home site.

The evidence concerning the alleged loan of $11,000 by Lambrew was even clearer. A mortgage purporting to secure construction advances of $11,000 was executed by appellant in favor of Lambrew and duly recorded in 1948. But witnesses, including both Lambrew's attorney and appellant's attorney, testified that the mortgage had been executed in contemplation of advances which never were made, and that it was later released without ever having secured any indebtedness.

The account of the Navarro transaction was a strange one which need not be detailed here. It will suffice to say that this was a story of a woman, employed as a salaried clerk both before and after the alleged transaction, bringing $21,000 in currency upon her person from South America in June, 1948, and delivering the money to appellant in a taxicab in return for a signed but unwitnessed agreement in which he undertook that she should have a half interest in his home then under construction. When asked in 1952 to produce the original paper in order that the age of the writing might be tested, she stated that it had disappeared, although counsel for appellant had been able to produce a photostatic copy. There was even testimony which created serious doubt whether the defendant had known Mrs. Navarro before 1950.

In all, we think a strong case was made that the appellant's itemizing of these supposed sources of non-taxable receipts was a calculated misrepresentation designed to conceal current income.

We have not mentioned the additional fact that the prosecution did make some effort to show affirmatively a taxable source of 1948 income. One witness testified that he met appellant in 1950, at a time when the witness was interested in the possibility of utilizing appellant's services in a business venture. At that time appellant explained that he was a state employee with very good governmental connections and that "he was a lobbyist or go-between for the pinball operators and the government." If this evidence had been connected with the year 1948 it would have supplied a significant indication of a likely source of unreported 1948 income. But we think that this unamplified statement of what the appellant was doing in 1950 is too far removed in time from the taxable year to provide any substantial support for an inference that he received income from that source in 1948. Therefore, the case against the appellant must stand or fall on the adequacy of the proof of a calculated misrepresentation of source, as outlined above, to complete a legally acceptable circumstantial show-

ing that the expenditures in question were derived from taxable income.

A second matter urged on this appeal is also the subject of comment in the Holland case. There, and in the companion Calderon case, Mr. Justice Clark alludes to the necessity of showing that the unreported earnings occurred in the tax year which the charge specifies. See Holland v. United States, 348 U.S. 121, 129, 75 S.Ct. 127; United States v. Calderon, 348 U.S. 160, 168, 75 S.Ct. 186. Appellant here says that neither the charge nor the evidence was clear enough on this point to permit the conviction to stand. We think he is mistaken.

 The government made a strong showing of the taxpayer's very small net worth at the end of 1947. All of his discoverable assets at the beginning of the taxable year added to his admitted earnings during that year amounted to only about 25% of what he actually spent in 1948. Thus, the inference is clear and strong that for him some source of funds was very productive in 1948. It is also relevant that appellant himself in explaining his 1948 affluence attributed it to financial transactions in that year. This is not a case of large transactions and receipts spread over a number of years. All of the evidence of large receipts and large expenditures concerns occurrences in 1948. If we are correct in our view that the evidence sufficiently indicates that appellant's 1948 expenditure included unreported income, there was ample basis for concluding that this gain was realized in that year, and no indication that it might represent acquisitions of any earlier year.

In his instructions to the jury the trial judge stated that appellant was charged with reporting the 1948 income of himself and his wife in a certain small amount knowing "that their joint net income for said calendar year was the sum of $42,410.72". He later called to the jury's attention that "the prosecution year in this indictment is 1948". He spoke of the efforts of the government "to find all possible sources

of income that this defendant had during the period in question". He cautioned the jury "that evidence of spending money is not in itself evidence of having taxable income in the year in which the money was spent." The entire charge and the posture of the evidence considered, we think the court made it clear to the jury that appellant could be convicted only if they found that he had 1948 income which he wilfully failed to report.

We have considered all other contentions of the appellant. In our judgment they reveal no basis for setting aside this conviction.

The judgment will be affirmed.