C. W. LAUGHINGHOUSE and Ruby E.
Laughinghouse, Petitioners,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 15296.

United States Court of Appeals
Fifth Circuit.

Nov. 18, 1955.

Dorothea Watson, and Claude L. Gray, Orlando, Fla., for petitioners.

H. Brian Holland, Asst. Atty. Gen., S. Dee Hanson, Ellis N. Slack, Sp. Assts. to Atty. Gen., Daniel A. Taylor, Chief Counsel, Int. Rev. Service, Rollin H. Transue, Sp. Atty., Int. Rev. Service, George F. Lynch, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and CAMERON, Circuit Judges.

BORAH, Circuit Judge.

This is a petition to review the decision of The Tax Court[1] sustaining a deficiency determination in petitioners' Federal income taxes for the calendar year 1944.

The petitioner, C. W. Laughinghouse, during the year 1944, was engaged in business as a wholesale beer and wine distributor. On September 30, 1944, this business was discontinued and sold to petitioner's brother for $26,494.94. The sale included, among other assets, the beer and wine stock on hand and other inventories, and under the terms of the purchase agreement, the vendee assumed the liability which was designated on petitioner's books as "container liability."

On July 8, 1946, and at the request of the Commissioner, petitioner had his

---

1. The opinion of The Tax Court is reported at 22 T.C.M. 1256.

bookkeeper prepare net worth statements for 1943 and 1944. These statements, which were compiled from the books and other information furnished by the petitioner, are set forth in the margin.[2] An examination of the December 31, 1943 statement discloses three asset items designated "container stock, etc." which represent the total amount of refundable deposits that petitioner had paid to the manufacturers on returnable beer and wine containers which had been shipped to petitioner. The liability items[3] on this statement, and which were designated "container liability, etc." represent deposits which trade customers had made with the petitioner on the containers which they had received in the purchases of beer and wine. In his net worth statements, petitioner treated the container liability items as *actual* liabilities, offsetting his aggregate

|  | | December 31 | |
|---|---|---|---|
| 2. | "Item | 1943 | 1944 |
| | Cash | 11.92 | 21,200.00 |
| | First National Bank—Orlando | 1,020.32 | 40,499.38 |
| | First National Bank (Mrs. C.W.L.) | | 10,000.00 |
| | Accounts Receivable | 1,340.18 | |
| | Keg Memo | 3,804.00 | |
| | U. S. War Bonds | 3,750.00 | 3,750.00 |
| | Del. Equip.—Old | 464.58 | |
| | Del. Equip.—New | 4,050.50 | |
| | Trucks | | 1,322.17 |
| | Furniture & Fixtures | 177.05 | |
| | Wine Equipment | 424.77 | |
| | Draught Beer Equipment | 133.77 | |
| | Meter Deposits | 20.00 | |
| | Container Stock .05 | 580.30 | |
| | Container Stock Beer Cs & B | 10,835.08 | |
| | Container Stock Kegs | 6,840.00 | |
| | Inventory Beer | 6,085.14 | |
| | Inventory Wine | 12,949.75 | |
| | Whiskey & Wine | | 400.00 |
| | Elwood Street Lot | 450.00 | 520.00 |
| | N. Westmoreland Residence | 7,600.00 | |
| | 2 40-Acre tracts land | 1,100.00 | 1,100.00 |
| | Winter Park Home | 34,000.00 | 34,000.00 |
| | 1940 Buick Sedan | 275.00 | |
| | 1939 La Salle Car | 791.68 | |
| | 1941 4-door Buick | | 1,275.00 |
| | 1941 4-door Packard | | 1,200.00 |
| | | 96,704.04 | 115,266.55 |
| | Accounts payable | 11,096.46 | |
| | Balance 1943 income tax | 3,374.09 | |
| | Notes payable—C. T. Laughinghouse | 7,000.00 | 7,000.00 |
| | Container liability .05 | 286.05 | |
| | Container liability .50 | 6,579.51 | |
| | Container liability Keg Memo | 3,804.00 | |
| | Reserve for Deprec. Trucks | 3,407.24 | |
| | Reserve for Deprec. Wine Equip. | 374.69 | |
| | Reserve for Deprec. 1940 Buick | 0 | |
| | Reserve for Deprec. 1939 La Salle | 0 | |
| | Mortgage Pay. Winter Park Home | 21,431.70 | 20,800.00 |
| | 1944 unpaid income tax | | 13,279.93 |
| | Net Worth | 39,350.30 | 74,186.62 |
| | | 96,704.04 | 115,266.55" |

3. Of the three container liability items, only two, aggregating to $6,865.56 are here disputed.

assets as of December 31, 1943, because for each container released to customers and on which the required deposit had been made there was a corresponding diminution of the container stock on hand which was available for return to the manufacturer.

The Commissioner, without questioning the net worth statements submitted by petitioner, determined the deficiency on the basis of increase in net worth plus expenditures, computed as follows: First, and as a starting point, the Commissioner cumulated the amounts of the following items: (1) petitioner's increase in cash, (2) nondeductible disbursements,[4] (3) unallowable deductions,[5] and (4) the amounts by which his December 31, 1943 accounts payable, mortgage payable, and the two disputed "container liability, etc." items had been reduced during the tax year. From the sum of the above cumulated amounts, the Commissioner then subtracted: (a) petitioner's increase in depreciation reserve, (b) a $36,890.27 item, designated "Reduction of Inventories,"[6] which represented the reduction of beer and wine and container stock inventories resulting from the sale of petitioner's business on September 30, 1944, and (c) other amounts representing the reduction of other assets during the taxable year. And the remainder, which was obtained by this computation, was determined by the Commissioner to be petitioner's net income which was an amount substantially in excess of that reported by petitioner in 1944.

The sole question here is whether the Tax Court properly found that the Commissioner, in computing the petitioner's income by the net worth plus expenditures method, correctly increased petitioner's taxable income for 1944 to the extent of the reduction of the "container liability" accounts.

Petitioner is here insisting that he did not receive taxable income from the reduction of the "container liability" accounts for the reason that these accounts were merely accounts of convenience which had been liquidated before the business was sold on September 30, 1944, and further, that the sale of his business for $26,494.94 limited the Commissioner's determination of net taxable income to such amount in the computation of the increase in his net worth for the tax year involved. We do not at all agree. We know of no authority, and the petitioner cites none, holding that the sale price of a business is the determining factor in the Commissioner's computation of the increase in one's net worth.

Obviously, the petitioner's contentions are based upon a misconception of the net worth plus expenditures method of proof employed in this case, which method is not a direct, but an indirect method of proving the receipt of unreported income. The theory of this method is that during the tax period, the aggregate nondeductible expenditures, plus any increase in net worth unaccounted for by gifts or inheritances, constitutes the taxable income. If the sum

---

4. Truck, auto and live stock purchases; income tax payments; living and personal expenditures.

5. Fifty percent of capital loss not allowable.

6. This deduction, labeled "Reduction of Inventories," aggregating $36,890.27 represents the following:

| | |
|---|---:|
| Beer at 12/31/43 | $ 6,085.14 |
| Wine at 12/31/43 | 12,949.75 |
| Container stock (.05) at 12/31/43 | 580.30 |
| Container stock (.50) at 12/31/43 | 10,835.08 |
| Container kegs at 12/31/43 | 6,840.00 |
| | $37,290.27 |
| Less: Whiskey on hand 12/31/44 | 400.00 |
| | $36,890.27 |

thus derived is greater than the income reported, then the taxpayer has failed to return all of his taxable income. This indirect method of proving the receipt of unreported income clearly involves additional data and an accounting approach substantially different from the specific receipts and disbursements method customarily used by taxpayers. Moreover, the net worth plus expenditures method does not identify the sources of the total net income thus calculated, and the burden of disproving the net worth determination of taxable income is upon the taxpayer. We think that petitioner has not discharged that burden and that he has failed to demonstrate error in the Commissioner's determination with reference to the "container liability" accounts. There is, there can be no doubt that in the preparation of the net worth statements the petitioner was concededly obliged to report the $6,865.56 which he held on December 31, 1943, as refundable deposits on containers, and the complete liquidation of this contingent liability during the tax year, at whatever date, necessarily reduced by $6,865.56 the total amount of year-end liabilities. The Commissioner subtracted $36,890.27 representing the decrease in assets resulting from the sale of petitioner's business and credited $6,865.56, the amount of the admitted decrease in petitioner's business liabilities. Thus, it is clear that both the asset and the liability accounts were properly offset one against the other and the Tax Court was correct when it said: "Consistency demands that the asset and liability accounts covering these deposits receive similar treatment."

We find no merit in the petitioner's contentions. His failure to keep sufficient books necessitated resort to the net worth method, Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, White v. Commissioner, 3 Cir., 196 F.2d 728, and we are in no doubt that the tax liability was correctly ascertained by a proper application of that method. The decision of The Tax Court is accordingly

Affirmed.