**UNITED STATES of America**

v.

**Harry L. DONOVAN.**

**Cr. No. 5985.**

United States District Court
E. D. Virginia.

June 8, 1956.

James R. Moore, R. R. Ryder, Edwin J. Slipek, Asst. U. S. Attys., Richmond, Va., for the Government.

Leith S. Bremner, Alexander W. Neal, Jr., W. Gibson Harris, Richmond, Va., for defendant.

STERLING HUTCHESON, Chief Judge.

The indictment charges the defendant with filing false income tax returns for certain years in which, it is alleged, he understated the amounts of his income for the purpose, or with the intent to defraud the United States of the tax due on such unreported income.

In undertaking to support the charges, the Government has employed what has become known as the net worth method of proof. This method has been utilized with increasing frequency in recent years and the applicable principles have given the courts concern. The method was fully discussed during the trial and no useful purpose would be served by a repetition at this time.

The hearing before the jury consumed eight days and the record contains more than nine hundred pages.

At the conclusion of the Government's evidence the defendant filed a motion for a judgment of acquittal, which was renewed at the conclusion of all the evidence. Decision was reserved until after verdict. The jury returned a verdict of guilty and the motion was again renewed and is now before me for disposition.

I shall not undertake to review the evidence in detail, but there are certain facts and principles of law to which I should refer.

As the result of the large number of net worth cases being brought to its attention, the Supreme Court granted certiorari in the case of Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 130, 99 L.Ed. 150 which was decided on December 6, 1954. In its opinion, the Court discussed at length the principles involved in the trial of cases of this kind. The opinion in the Holland case has been carefully considered by a number of the lower courts since it was rendered.

In the Holland case, the Court in discussing the method, after remarking that it was assumed in view of its widespread use, that the Government deemed it useful in enforcement of the criminal sanctions of the income tax laws, stated:

"* * * careful study indicates that it is so fraught with danger for the innocent that the courts must closely scrutinize its use."

It was pointed out that it "was a potent weapon in establishing taxable income from undisclosed sources when all other efforts failed."

Summarizing, the Court used the following language:

"While we cannot say that these pitfalls inherent in the net worth method foreclose its use, they do require the exercise of great care and restraint. The complexity of the problem is such that it cannot be met merely by the application of general rules. * * * Trial courts should approach these cases in the full realization that the taxpayer may be ensnared in a system which, though difficult for the prosecution to utilize, is equally hard for the defendant to refute. Charges should be especially clear, including, in addition to the formal instructions, a summary of the nature of the net worth method, the assumptions on which it rests, and the inferences available both for and against the accused. Appellate courts should review the cases, bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation."

From a study of the Holland case and cases subsequently decided, it appears that there are certain essential requirements which must be met by the proof when resort is had to establishing a fraudulent understatement of income by evidence showing an increase in the known value of the net worth of the assets of the taxpayer.

██ Without mentioning others not here involved, so far as this case is concerned there are two bases or foundation pillars, which must be established with reasonable certainty:

1. An increase in the known net worth value of the assets of the taxpayer during the period under consideration. Such an increase, standing alone, is insufficient to support a charge that it represents currently taxable income. There must be established:

2. A likely source from which the jury can reasonably find that the net worth increase is attributable to currently taxable income.

Evidence in support of these two factual requirements is necessary to justify the submission of the case to the jury.

Turning to this case, prior to some time in the early 1930's, the defendant was a dealer in illicit whiskey. Thereafter, until the enactment by Congress of what has been referred to as the "Gambling Stamp Law," 26 U.S.C.A.

(I.R.C.1954) § 4401 et seq., he was the operator of a clearing house game of chance known as the numbers game in the city of Richmond.

It should be unnecessary to point out that he is here to answer only the charges contained in the indictment, which relate to alleged fraudulent efforts to evade the payment of income taxes. However, numerous references to his occupation were made during the course of the trial and it will be necessary to discuss his activities in the numbers game to clearly understand the issues now to be decided.

As is usually the case, there was conflicting evidence concerning the establishment with reasonable certainty of an opening net worth to serve as a starting point for the calculation of future increases.

The Government introduced testimony regarding statements allegedly made by the taxpayer in 1936 and in 1941 in relation to investigations then being conducted and a statement said to have been made in 1946 concerning the value of his assets. While the Court in the Holland case made reference to reliance by the prosecution on statements of the taxpayer made to investigating agents to establish vital links in the Government's proof, it gave expression to an opinion that " * * when a revenue agent confronts the taxpayer with an apparent deficiency, the latter may be more concerned with a quick settlement than an honest search for the truth."

I shall pass this point, as I regard it unnecessary under the facts of this case to determine the sufficiency of this evidence to convict under the principles stated in the Holland case. In that connection, I point out that there was both direct and circumstantial evidence which the jury might have accepted tending to show a failure to establish a proper beginning net worth.

Turning to the second factual requirement, a somewhat more detailed discussion of the evidence is necessary.

A review of many cases decided since the Holland case shows a sharp distinc-tion from this case as regards records of the taxpayer. Judge Hand, in the Costello case, United States v. Costello, 2 Cir., 221 F.2d 668, pointed out in his statement of facts the requirements in a clear and succinct manner, and the difference between the facts of that case and this case is clearly evident.

Beginning in the mid-1930's, the taxpayer employed a reputable, well known firm of certified public accountants to audit his books and records and to file his tax return. These books and records covered the clearing house operations as well as some farming and horse breeding and racing occupations. The controversy centers around the operation of the game of chance. Slight reference was made to the other activities, which appear to have resulted in large losses. The accountants set up a system of bookkeeping under which the receipts or "take" of each pick-up man was tabulated. A memorandum of such tabulations was furnished each pick-up man daily and at the end of the week he was supplied a summary of the play or take for which he was accountable and upon which his compensation was based, as well as a statement of the "hits", or winning numbers distributable among his clientele. At the end of the year, each pick-up man was given a Treasury form reflecting his total income from the business and required by the taxpayer to go to the certified public accounting firm to have his tax return prepared and then to file the return and pay the tax indicated. The pick-up men constituted the link between the taxpayer and the writers. They were reflected on the books of the taxpayer by key symbols and so identifiable.

There were forty-one so engaged. The agents interviewed fourteen. The Government called only some of them as witnesses, and did not call others summoned. No explanation was offered for not interviewing the remaining twenty-seven or for failing to call the others in attendance. However, they were called to testify by the defense.

Each testified that the daily, weekly, and annual compilations furnished them were accurate.

The adding machine tapes reflecting the weekly computations, used in making entries of receipts in the books of the taxpayer, were filed as exhibits. The daily computations had been destroyed.

An experienced and reputable auditor engaged by the taxpayer testified that in his opinion the weekly settlements with the pick-up men, represented by the tape, were an adequate and sufficient check to insure the accuracy of the receipts.

There was no proof advanced by the prosecution in support of its contention that the books and records did not properly reflect the income received from the business of the taxpayer and, in effect, it conceded that no other likely source of income was shown.

Since the pick-up men called as witnesses by the Government corroborated the books and records, the language of the Holland case becomes pertinent. I read from page 135 of 348 U.S., page 135 of 75 S.Ct.:

"When the Government rests its case solely on the approximations and circumstantial inferences of a net worth computation, the cogency of its proof depends upon its effective negation of reasonable explanations by the taxpayer inconsistent with guilt. Such refutation might fail when the Government does not track down relevant leads furnished by the taxpayer—leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence. When the Government fails to show an investigation into the validity of such leads, the trial judge may consider them as true and the Government's case insufficient to go to the jury. This should aid in forestalling unjust prosecutions, and have the practical advantage of eliminating the dilemma, especially serious in this type of case, of the accused's being forced by the risk of an adverse verdict to come forward to substantiate leads which he had previously furnished the Government. It is a procedure entirely consistent with the position long espoused by the Government, that its duty is not to convict but to see that justice is done."

This is especially true when the testimony of the auditor as to the adequacy of records is considered along with the failure of the Government to impeach their correctness except by undertaking to invoke a presumption of falseness because of the occupation of the taxpayer. In this connection, reference should be made to the fact that over a period of approximately twenty years, the annual returns of the taxpayer have been carefully scrutinized by the Treasury Department in a search for fraud, resulting in approval of the agents conducting the search. The contention of the Government is that unreported income was received and that it was received from the numbers business in some manner to which the Government could not point.

This contention is precisely the same one considered by the United States Court of Appeals (First Circuit) in the case of Thomas v. Commissioner of Internal Revenue, 232 F.2d 520, 526, decided on April 12, 1956. That it was a civil case in which the degree of proof required varied from this case, makes the interpretation by that court of the Holland case particularly significant. There the Court said:

"Respondent further contends that in any event the requirement has been met because the taxpayers' corporation is a possible source of taxable income which could account for the net worth increases. We think this argument assumes the very fact to be proved. There must be some independent showing that the corporation might be the source of the unreported income, not merely a negative inference arising from the prior assumption that the increases were taxable and therefore must de-

rive from the corporation since no other taxable source is apparent.

"In United States v. Johnson, 1943, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546, the taxpayer concealed his ownership in various enterprises which were possible sources of the unreported income. In the Holland case the business was proven to be capable of producing much more income than was reported and in an amount sufficient to account for net worth increases.

"No such showing has been made in the instant case. The books of the corporation are admittedly consistent. Of course this does not prove they are honest, but in the absence of some independent evidence to the contrary, we believe that respondent has not indicated a likely source of taxable income. There can be no presumption that the books of the corporation are wrong, for any such approach would render entirely nugatory this particular safeguard against abuses of the net worth method."

The language of that case is peculiarly applicable to the facts of the case now before the Court. To sustain the verdict in this case would establish a principle to the effect that a showing by the Government of an increase in the known value of the net worth of the assets of a taxpayer, alone, is sufficient to place upon him the burden of proving that none of it represents unreported currently taxable income. This the courts have declined to do. To follow such a course to a logical conclusion would lead to a situation in which a showing that a taxpayer had spent more than he reported as income in a given period would place upon him the burden of proving that the excess was not taxable income.

 It is my considered opinion that due to the failure of the prosecution to show with reasonable certainty a likely source to which the increase in net worth may be attributable as currently taxable income, the case should not have been submitted to the jury for its consideration. Accordingly, the motion of the defendant for a judgment of acquittal is granted and the Clerk is directed to enter judgment on the records.