Bernard C. **HASSON** and **Helen Hasson,**
Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 12758.

United States Court of Appeals
Sixth Circuit.

Dec. 14, 1956.

779

Stewart, Circuit Judge, dissented.

Willis S. Siferd, of Light & Siferd, Lima, Ohio, for petitioners.

Meyer Rothwacks, Washington, D. C. (Charles K. Rice, Lee A. Jackson, I. Henry Kutz, Washington, D. C., on the brief), for respondent.

Before SIMONS, Chief Judge, and MARTIN and STEWART, Circuit Judges.

MARTIN, Circuit Judge.

This review of the decision of the Tax Court of the United States requires an answer to the question of whether, in the use of the net-worth-increase method, the evidence received was adequate to sustain a finding that there are deficiencies in the income tax of petitioners, husband and wife, and additions to tax under sections 293(a) and 294(d), I.R.C. of 1939, 26 U.S.C.A., for the years 1949, 1950, and 1951, in the amounts determined.

Bernard C. Hasson and his wife, Helen, filed joint tax returns for the years involved, reporting gross income of $19,-660.32. By use of the net-worth and expenditures method, this sum was adjusted to $34,010.69; from which it results that the taxpayers failed to report $14,350.37 for the three-year period. The additional income was allocated to each of the taxable years in equal amounts of $4,783.46.

In its findings of fact, the Tax Court sketched Bernard Hasson's economic activities from the time in 1930 when, at age 17, he left high school. He started working as an attendant at a gasoline service station; but soon, in the next year, he became employed by an operator of pinball and slot machines, juke boxes, and the like. He earned $20 per week, plus free room and board. After his first year in this activity, his salary was increased to $70 per week, with additional semiannual bonuses. His employer died in October of 1936; and, in 1937, the petitioner, his brother Raymond, and two other persons operated the business, which had been turned over to them by the widow of their former employer. At the end of 1938, all the four, except Raymond Hasson, abandoned the operation and it was conducted thereafter solely by Raymond.

The record fails to disclose that petitioner retained any proprietary interest in the business. He did not report on his federal income tax return the sale to his brother of any interest which he may have had in the business. From 1938 to 1942, the petitioner worked in the employ of Westinghouse, earning soon after his employment between $275 to $375 per month. In 1942, he was divorced from a marriage consummated in 1938. However, he and his wife were separated for two or three years before they were divorced. After this separation, petitioner lived at home with his parents until he was inducted into the Army in March of 1943. He was honorably discharged for medical reasons in the latter part of that year.

In 1944, he became a bartender at the Elks Lodge in Lima, Ohio, at a salary of $70 per week. In about three years, he was promoted to assistant manager of the club and his wages were increased from around $3,500, for each of the years 1944 and 1945, to $6,378.48 for 1949; to $6,155.89 for 1950; and to $5,675.30 for the first eleven months of 1951.

In January of 1946, Bernard Hasson married his present wife, Helen Hasson. He had purchased a duplex residence in Lima, Ohio, late in the preceding year. He financed this purchase almost entirely by mortgage. The purchase price totaled $8,750, including furniture for four rooms.

Before his marriage, the petitioner had accumulated cash in undeposited savings. A revenue agent testified that, when questioned in 1952, Hasson had stated that his cash on hand on January 1, 1946, amounted to about $3,500, which sum he later revised to $5,000. During 1946, 1947, and 1948, petitioners reported salary receipts in the respective approximate amounts of $3,500, $3,701.25, and $4,732.66. In addition, they received approximately $400 per year in rent from the part of the duplex which they did not occupy. During 1947 and 1948, the petitioner made bank loans of $710.25 and $574.89.

The Tax Court found that petitioners expended about $1,000 more for each of the years 1946, 1947 and 1948, than the cash receipts reported for those years in their income tax returns.

In their returns, petitioners reported as net income for 1949, 1950, and 1951, the respective sums of $5,744.40, $5,335.31, and $6,614.58. The Commissioner of Internal Revenue determined that the returns and records of the petitioners did not reflect their entire income and, by using the net-worth method, determined the amounts which they had failed to report as income for those years. We think there is sufficient evidence to support his findings.

The Hassons had two children: one born in 1946 and the other in 1947. Their living expenses were calculated at $2,500 during each of the taxable years. In 1950, they purchased a new $4,600 automobile and a $500 television set, and spent from $150 to $200 on a vacation trip. They received $4,114.04 on a tornado damage policy, of which $1,693.74 was spent for repairs on the home. In 1951, they purchased a new $18,000 home and expended $2,250 for furniture and appliances therefor. At the end of 1951, petitioner ceased his employment with the Elks Lodge and purchased an inter-

est in the Continental Bar in his home city of Lima.

In his net-worth computation, the Commissioner of Internal Revenue determined that petitioner's capital account in this saloon business amounted, on December 31, 1951, to $14,304.53. In addition to his $5,675.30 salary from the Elks Lodge in 1951, Hasson reported on his return for that year that his distributive share of profits from the operation of the Continental Bar was $804.53. He also reported a $900 payment received by him for the administration of the estate of his deceased brother, Raymond. Petitioners failed to report receipt of $240 interest in 1951 on a $3,000 loan made to Herbert Arps in 1950 and repaid in 1951, or the receipt of $88 interest the same year from Raymond Hasson on a one-year note for $1,200 dated October 18, 1950. In 1951, petitioner borrowed $3,000 from his mother and received $1,000 from the sale of some furniture from the old home. Petitioners received no substantial gifts or inheritances during the taxable years 1949, 1950, and 1951. They filed no declarations of estimated income taxes for those years.

In concluding its findings of fact, the Tax Court included a condensed net-worth computation used by the Commissioner of Internal Revenue in determining the income tax deficiencies; but the condensed computation was adjusted to make it accord with the Tax Court's findings of fact and to take into account certain concessions made by the Commissioner.

■ We find no inhibition in the use of the net-worth-increase method by the Commissioner where, as here, the taxpayer whose main source of income was his salary had outside financial transactions but maintained no books or records which accurately reflected his total income. The employment of cash hoarding is a typical method used by tax evaders. The hazy situation revealed in the record with respect to Hasson's interest in slot machines as a probable source of revenue, in addition to the scale upon which he and his wife were living, justi-

fied, in our judgment, resort by the Commissioner to the net-worth-increase method of computing income.

We find nothing to the contrary in the cautions set forth in Holland v. United States, 348 U.S. 121, 138, 75 S.Ct. 127, 137, 99 L.Ed. 150. There, while it was said that the Government may not disregard explanations of defendant reasonably susceptible of being checked, it was also stated that "where relevant leads are not forthcoming, the Government is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant."

■ Simultaneously with announcement of its opinion in the Holland case, the Supreme Court affirmed the decision of this court in Friedberg v. United States, 348 U.S. 142, 75 S.Ct. 138, 99 L. Ed. 188, holding that evidence adduced by the Government as to the petitioner's financial difficulties prior to the beginning of the computation period amply justified the conclusion of the jury that he had accumulated no such cash reserves as he claimed. See also the opinion of this court in Rubino v. Commissioner of Internal Revenue, 6 Cir., 226 F.2d 291, 295, net-worth-increase computation case wherein we said: "The Commissioner's determinations of fact are presumptively correct and, unless the Tax Court's decision upholding the Commissioner is clearly erroneous, it is conclusive. Thomas v. Commissioner of Internal Revenue, 6 Cir., 223 F.2d 83, 88; 26 U.S.C., § 1141; Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C."

■ Of course, as recognized in the Thomas case and in Gariepy v. United States, 6 Cir., 189 F.2d 459, 461, the net-worth method to be dependable requires a reasonably well-established, accurate starting point. However, the Government is not required to prove a negative, or to refute all possible speculation as to the source of the taxpayer's asserted funds. 189 F.2d 463. The conviction in the Gariepy case was affirmed. In Laughinghouse v. Commissioner of Internal Revenue, 5 Cir., 227 F.2d 477, 480,

the Court of Appeals for the Fifth Circuit declared that "the net worth plus expenditures method does not identify the sources of the total net income thus calculated, and the burden of disproving the net worth determination of taxable income is upon the taxpayer." It was held that the petitioner had not discharged this burden. Compare Bryan v. Commissioner of Internal Revenue, 5 Cir., 209 F.2d 822. See also a clear-cut opinion by Chief Judge Phillips in Hooper v. United States, 10 Cir., 216 F.2d 684, wherein a conviction for income tax evasion obtained by resort to net-worth accounting method was upheld.

Among authorities supporting the Tax Court's decision in the instant case, we think the following opinions, though in cases factually dissimilar, have relevant bearing. Halle v. Commissioner of Internal Revenue, 2 Cir., 175 F.2d 500; Lipsitz v. Commissioner of Internal Revenue, 4 Cir., 220 F.2d 871; Goe v. Commissioner of Internal Revenue, 3 Cir., 198 F.2d 851; United States v. Adonis, 3 Cir., 221 F.2d 717, 719.

■ In answer to the argument of petitioners that certain uncontradicted testimony should have been accepted with finality by the Tax Court, we refer to the statement of Mr. Justice Field in Quock Ting v. United States, 140 U.S. 417, 420, 11 S.Ct. 733, 734, 35 L.Ed. 501, that there "may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony." Cf. Hoefle v. Commissioner of Internal Revenue, 6 Cir., 114 F.2d 713, 714, where this court said that the findings of fact of the Board of Tax Appeals, if supported by substantial evidence, could not be reversed, "even if, on the basis of the record, we think we would find differently." See also Rogers v. Commissioner of Internal Revenue, 6 Cir., 111 F.2d 987, 988.

■ It is settled law that a decision of the Tax Court will not be reversed unless, on review of the entire record, the conviction is inescapable that the result reached by the Tax Court was clearly erroneous. Commissioner of Internal Revenue v. Thompson, 3 Cir., 222 F.2d 893, 895. Cf. United States v. United States Gypsum Co., 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746.

In Wilmington Trust Co. v. Helvering, 316 U.S. 164, 168, 62 S.Ct. 984, 986, 86 L.Ed. 1352, the Supreme Court said: "The court may not substitute its views of the facts for that of the Board. Where the findings of the Board are supported by substantial evidence they are conclusive. [Citing cases.] Under the statute the court may modify or reverse the decision of the Board only if it is 'not in accordance with law'". In Burford-Toothaker Tractor Co. v. Commissioner of Internal Revenue, 5 Cir., 192 F.2d 633, 635, it was asserted: "The question is not what this court would have determined to be reasonable compensation if it were the fact finder but only whether petitioner's evidence was so compelling as to justify this court in concluding that the Tax Court reached a 'clearly erroneous' decision in finding the lesser amounts to be reasonable." Citing statutes, Rules of Civil Procedure, and United States v. Yellow Cab Co., 338 U.S. 338, 340–342, 70 S.Ct. 177, 94 L.Ed. 150; and United States v. United States Gypsum Co., supra.

■ In a recent decision of this court, we reiterated that the burden of proof in respect to income tax deficiencies is on the taxpayer to show that the determination of the Internal Revenue Commissioner was invalid. Kashat v. Commissioner of Internal Revenue, 6 Cir., 229 F.2d 282. This principle should be steadfastly applied. Applying it to the record before us, we think the decision of the Tax Court should be affirmed.

STEWART, Circuit Judge (dissenting).

By use of the net worth method the Tax Court determined income tax deficiencies against the petitioner of about $800 for each of the years 1949 and 1950, and of about $1,000 for 1951. This result was largely accomplished by refusing to credit the petitioner with any cash on hand at the beginning of the taxable period.

The petitioner, his wife and his mother all testified that he did have cash savings on December 31, 1948. This testimony was corroborated by two disinterested witnesses. No one testified to the contrary. There was nothing inherently incredible about this evidence. The petitioner was continuously employed at relatively high wages for fifteen years before the period in question; during much of that time he was unmarried and living with his parents, so that his expenses were low. He testified that his reason for saving was to go into business eventually for himself, and that is what in fact he did in December of 1951. In my opinion the Tax Court's finding that petitioner had no cash savings at the beginning of 1949 was clearly erroneous.

My disagreement with the majority, however, amounts to more than simply a different view of the particular facts of this case. It stems rather from a belief that use of the net worth method in a case like this is not justified.

The petitioner was a full time salaried employee during the taxable period, except for the last month of the final year. He had some additional income during the period, consisting of rental from the upstairs apartment in the duplex where he lived, a $900 administrator's fee and $328 of interest. He fully and accurately reported his salary and the rental and administrator's fee. He fully and accurately reported partnership income for the single month of 1951 that he was in business. The Commissioner did not claim and the Tax Court did not find otherwise.[1]

In the proceedings below the Commissioner made an effort to show possible additional sources of income. The petitioner adduced positive evidence to refute each source suggested. The petitioner's evidence apparently satisfied the Tax Court, since it made no findings as to any likely source of additional income and concluded in its opinion that the Commissioner had failed to show such a source. Para. 55,121 P-H Memo T.C.

The Supreme Court has said, "Increases in net worth, standing alone, cannot be assumed to be attributable to currently taxable income. But proof of a likely source, from which the jury could reasonably find that the net worth increases sprang, is sufficient." Holland v. United States, 1954, 348 U.S. 121, 137, 138, 75 S.Ct. 127, 136. It is the view in the First Circuit that this language makes proof of a likely source, "an indispensable element of the net worth method." Thomas v. Commissioner, 1 Cir., 1956, 232 F.2d 520, 526. See also United States v. Donovan, D.C.E.D.Va., 1956, 142 F.Supp. 703. We have not thought that these words in the Holland opinion stated such an absolute injunction. See Thomas v. Commissioner, 6 Cir., 1955, 223 F.2d 83, 86; Kashat v. Commissioner, 6 Cir., 1956, 229 F.2d 282, 285.

But the Supreme Court's language does clearly require some corroboration to support a finding that the alleged net worth increases were attributable to currently taxable income, and none was found by the Tax Court here. The net worth method of reconstructing income has typically been resorted to in cases involving entrepreneurial income of a substantial amount. In such cases the necessary corroboration can often be supplied by showing that the taxpayer's disclosed business was capable of producing additional income sufficient to account for the alleged net worth increases. But in the case of a low bracket taxpayer working full time on a salary, corroboration must be found elsewhere. United States v. Ford, 2 Cir., 1956, 237 F.2d 57; United States v. Adonis, 3 Cir., 1955, 221 F.2d 717.

I am convinced that the Tax Court in the present case has fallen into the very pitfalls so carefully pointed out by the Supreme Court in the Holland and companion opinions. Friedberg v. United States, 1954, 348 U.S. 142, 75 S.Ct. 138, 99 L.Ed. 188; Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; United States v. Calderon,

[1] From the outset the petitioner has conceded that he failed to report the interest income of $328.

784

1954, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202. To be sure those were criminal cases, and much of what the Supreme Court had to say in deciding them necessarily relates alone to criminal prosecutions. But the same limitations inhere in the net worth method wherever it is sought to be applied. It remains "a method that is itself only an approximation." 348 U.S. at page 129, 75 S.Ct. at page 132. And whatever the forum, "its use in the ordinary income-bracket cases greatly increases the chances for error." 348 U.S. at page 127, 75 S.Ct. at page 131.

The net worth method is a particularly formidable weapon against a taxpayer disarmed by the presumption of correctness attaching to the Commissioner's determination. I have serious doubts about the use at all of a method so inexact to arrive at amounts so relatively small as are involved here. And I am convinced that in permitting the naked use of net worth figures without the restraining necessity of a corroborative finding of the kind suggested, there lies the possibility of serious injustice to honest taxpayers.