Harrison L. **PUTMAN**
and
**Rilla B. Ripley, Administratrix of the
Estate of Goldie A. Putman,
deceased, Plaintiffs,**
v.
**UNITED STATES of America,
Defendant.**
Civ. No. 8213.

United States District Court
N. D. Ohio, W. D.
Dec. 16, 1960.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, George Elias, Jr., David A. Wilson, Jr., Robert H. Kapp, Attys., Dept. of Justice, Washington, D. C., Russell E. Ake, U. S. Atty., Cleveland, Ohio, Carl F. LaRue, Asst. U. S. Atty., Toledo, Ohio, for plaintiffs.

Shumaker, Loop & Kendrick, Robert Kniffin, G. Charles Scharfy, Robert B. Gosline, Toledo, Ohio, for defendant.

KLOEB, District Judge.

This is an action for the recovery of income taxes and penalty paid for the years 1942 through 1954, both inclusive, in the amount of $125,838.52.

Plaintiff, Harrison L. Putman, and Goldie A. Putman were husband and wife during the years in question. Plaintiff Rilla B. Ripley is the Administratrix of the Estate of Goldie A. Putman who died in the year 1955.

The Revenue Agent's report was prepared and the deficiency determined by the so-called net worth and non-deductible expenditures method of reconstructing income.

The statutes involved are:

Internal Revenue Code of 1939:

"SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

"Except as provided in section 276—

"(a) *General Rule.* The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

\* \* \* \* \* \*

"(c) *Omission from Gross Income.* If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed." 26 U.S. C. 1952 ed., § 275.

"SEC. 276. SAME—EXCEPTIONS.

"(a) *False Return or No Return.* In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." 26 U.S.C. 1952 ed., § 276.

The questions involved are:

(1) Whether the Commissioner of Internal Revenue correctly determined the taxpayer's income by the net worth method.

(2) Whether the taxpayer's income during the years 1942 to 1954 was fraudulently understated.

Harrison L. Putman was born in the year 1890, in Van Wert County, Ohio. In 1909, he married Goldie A. Heileman. Six children were born of this marriage. At the time of their marriage, neither the taxpayer nor his spouse had any property.

In 1910, plaintiff began farming on his parents' 140 acre farm situated in Van Wert and Mercer Counties. In 1915, plaintiff purchased this farm from his parents for $16,000, and, in 1923, he borrowed $10,000 from the Connecticut Mutual Life Insurance Company to complete the financing of this property. On September 24, 1936, he made final payment of the loan to the insurance company.

During the years prior to 1942, plaintiff received income from farming, threshing, oil royalties and employment by a road construction company and an automobile agency. He filed no income tax returns prior to the year 1940, and filed nontaxable returns for 1940 and 1941. It, therefore, is assumed that plaintiff's income in the years prior to and including the year 1941 never exceeded the sum of $2,500.

In 1956, the Revenue Agents having been denied access to most of the taxpayer's books and records, and finding those produced wholly inadequate, reconstructed the plaintiff's net income for the years 1942 through 1954 by the net worth and expenditures method. This analysis indicated that plaintiff's net worth had increased from $65,480.72 on December 31, 1941, to $286,817.17 on December 31, 1954. Plaintiff's assets consisted of extensive farm acreage amounting generally during the tax years to acreages up to about 800 acres and, in addition thereto, heavy deposits, at interest, with loan companies in Lima, Celina, and other points that at times totaled in excess of $100,000.

After the computations had been made by the Revenue Agents, they conferred with the taxpayer and, at times, one or both of his attorneys, Messrs. Charles Baldwin and S. S. Beard, in Van Wert, Ohio, and, at these conferences, plaintiff is said to have admitted that the figures appearing on the net worth account were correct, that the opening net worth was correct, and that he never carried large amounts of cash on hand which should have been reflected in the opening.

During the years in question, plaintiff made income tax payments in the following amounts in each of the following years (Stipulation, page 6):

| | |
|---|---|
| 1941 | -0- |
| 1942 | -0- |
| 1943 | $543.99 |
| 1944 | 65.73 |
| 1945 | 425.00 |
| 1946 | 435.00 |
| 1947 | 308.00 |
| 1948 | 576.00 |
| 1949 | 529.00 |
| 1950 | 477.00 |
| 1951 | 468.00 |
| 1952 | 476.00 |
| 1953 | 708.00 |
| 1954 | 618.00. |

The trial opened on April 27, 1960, and was concluded on May 6. The case is now submitted on the record, the exhibits, the stipulation, and the briefs of counsel.

In the course of the trial, Mrs. Florence Miller, of Rockford, Ohio, bookkeeper for the Willshire Grain and Supply Company, Clare Dudgeon, Assistant Manager of the Glenmore Farmers Grain Company, R. H. Froning, Manager of the Van Wert County Farm Bureau and Holland Pioneer Mills at Ohio City, Earl Sheets of the Farmers Grain Company at Willshire, Ohio, Wanda Sheets, bookkeeper for the Farmers Grain and Supply Company of Rockford, Ohio, Mrs. Albert Dudgeon of the Little Elevator, Rockford, Ohio, Jean Baugh, Attorney for the Anderson Elevator Company, Maumee, Ohio, and Ivo Grieshop, of the Farmers Grain and Supply Company, Rockford, Ohio, all testified as to numerous items of farm produce that had been sold at their places of business by plaintiff during the years in question, and identified the many checks that had been issued by them to plaintiff in payment therefor.

Mr. Louis Hierholzer, Vice President of the Citizens Commercial Bank of Celina, testified as to three certificates of deposit and cashiers' checks that he had issued in 1947 and 1954 to plaintiff in exchange for certain checks deposited therefor. He further testified that plaintiff had objected when he requested permission to show this information contained in the records of the bank to the Revenue Agents.

Mr. Paul E. Baer, Manager of the National Finance Company, Celina, Ohio, where plaintiff carried heavy deposits, at interest, during the years 1949 to 1954, both inclusive, adding up to as high as $85,300 (Stipulation, page 4) identified a number of interest checks that had been drawn to the plaintiff in

the years 1949 to 1954, both inclusive, and further testified that he had called the plaintiff and asked his consent to show the records of his institution to the Revenue Agents and that plaintiff refused to give his consent to disclosing such records.

John Crow, of the First National Bank of Celina, Ohio, testified as to certain certificates of deposit that his bank had issued to plaintiff in the years 1945 and 1946, in exchange for checks, including checks from the Willshire Grain Company and the Pet Milk Company that plaintiff endorsed over. He further testified that all the certificates of deposit, except one, were deposited in the City Loan and Savings Company, Lima, Ohio, and that the checks to buy these certificates had come additionally from different grain companies and the White Mountain Creamery, and Treasury interest checks.

Robert T. Bowman, Cashier of the Peoples Savings Bank of Van Wert, Ohio, testified concerning a certain cashier's check (Government Exhibit LL) in the amount of $1,754.59 that had been issued by his bank on January 6, 1948, and had been deposited with the City Loan Company of Lima, Ohio.

Willard Wenscott, Cashier of the Rockford National Bank, testified that plaintiff had a safety deposit box at the bank, and that the box had been opened of record on April 9, 1946, and February 4, 1952; that plaintiff had a checking account with his bank from December 1, 1941, but bought certificates of deposit at the First National Bank at Celina with checks received from various sources, and then deposited the certificates with the City Loan at Lima, Ohio, and the National Finance at Celina, Ohio.

Dana Miller, of the National Bank of Van Wert, testified as to certain cashiers' checks purchased at his bank by plaintiff, which were then deposited with various other institutions.

Plaintiff testified concerning his activities from the time of his marriage at the age of 19, including acquisition of land, and his activity in other related and unrelated lines of business. He further testified that he was satisfied that he had cash in his safe at his home on December 31, 1941, and that at about this time, in 1941 and 1942, he carried cash in his safe that could have been as high as $50,000 to $60,000 and that this was in bills of large denominations; that he had loaned the sum of $5,600 to Amos C. Schumm, of Rockford, Route 2, a retired farmer.

Amos C. Schumm, Rockford, Ohio, Route 2, testified that he never borrowed any sum from A. L. Putman and particularly $5,600 in the year 1941; that, in 1934, he borrowed from the Federal Land Bank and repaid this money in 1949.

Jacob Putman, son of plaintiff, testified as to certain loans that had been made by his father to him, and Rilla Ripley, daughter, testified as to certain loans made to her, of which she has no record.

The son and daughter of plaintiff testified that, at times, they were apprehensive as to the large amounts of cash that plaintiff carried on his person, but there was no corroboration of the testimony of plaintiff concerning the carrying of huge sums of money either in his safe at home or in his bank box in the bank at Rockford.

Richard A. Wasserman, Associate Chief of Receipts and Returns of the Internal Revenue Service, testified that plaintiff filed 1940 and 1941 tax returns, but that no tax was paid thereon, and that no returns were filed or tax paid prior thereto.

Don Myers, Van Wert County Auditor, testified that his records showed no tax paid by plaintiff beginning in the year 1936, and thereafter, on sums of cash carried in his safe or his safety deposit box, although the Ohio law required the return of such cash deposits to the County Auditor.

Robert G. Spees, Special Agent of the Internal Revenue Service since 1949, testified that he was assigned to plaintiff's case in August, 1955, and that he there-

upon made personal contact with plaintiff, accompanied by one Paul E. Krepps, also an Agent, and requested such of plaintiff's books and records as were available and examined them in plaintiff's home; that, on September 20, 1955, they again visited plaintiff and, at that time, plaintiff told them that he had no records for 1950 and the previous years; that he had made no loans to individuals other than to his sons and daughters, and that he did not ask them for notes in return for the loans because he would have had to report them for taxation; that, upon being asked what he kept in his safe, he replied that he kept his records, and that he did not keep cash, that he liked to have it work for him; that, on November 15, 1955, they again called on plaintiff for the third time and arranged to meet him in the Lima office on the 18th of November, 1955; that plaintiff said that he had inherited no money when information was requested of him as to his sources of income, that he said that farming and investments were the sources of his income; that the Agents then attempted to follow up all leads given by the plaintiff.

Herbert E. Palm, Revenue Agent since July, 1948, testified that he was assigned to this case in May of 1956; that he wrote Attorney Baldwin in Van Wert and arranged a conference in Mr. Baldwin's office for June 14, 1956, to be attended also by Attorney S. S. Beard, who represented plaintiff; that plaintiff was present at said conference with his attorneys, and that he stated that he would spend no more time on this case; that he had no records and none were forthcoming from the plaintiff; that the first cashier's check came to the Agent's attention at the City Loan and Savings Company at Lima, Ohio; that, on June 25, 1956, Mr. Baldwin met with him at plaintiff's home, and that jointly they examined plaintiff's check stubs; that he then checked all leads and, on September 6, 1956, met with plaintiff in Mr. Baldwin's office and disclosed his computation of tentative net worth beginning in 1937 through 1954; that plaintiff said that it wasn't his practice to keep cash on hand

during the entire period; that plaintiff and his attorneys were to give the Agent an answer on September 27, 1956, and that on that date they again met in Mr. Baldwin's office; that two informal conferences were thereafter held with plaintiff and his attorneys in the Lima office.

In connection with the direct examination of Agent Palm, the Court, having in mind that a number of conferences had been had between plaintiff and his attorneys and the several Revenue Agents assigned to the case in the years 1955 and 1956, concerned in the beginning with an effort to obtain plaintiff's books and records that would assist in a reconstruction of his income, and concerned, at the latter two conferences, with a submission and discussion of the net worth computations and conclusions arrived at by the Agents, put the following questions to and received the following answers from Agent Palm (Transcript, page 1):

"The Court: When was the last meeting you had with the taxpayer? A. The last meeting I had with the taxpayer, as I recall, prior to the informal conference would have been 9/27/56.

"The Court: Yes. Now, his attorneys accompanied him, did they? A. Yes.

"The Court: Had you made this net worth computation at that time? A. I had made a tentative net worth computation at that time.

"The Court: Did you go over that with the taxpayer and his attorneys? A. I did, sir.

"The Court: What if any objection was made at that time? A. Well, the objection made by the taxpayer was that he stated he didn't believe he could have made that much money, and in addition, he was concerned about the treating of the $2500.00 as rental income; and at that time, if I remember right, I told him or explained the process that he could file or I would issue a ten-day letter, which would give him the right to have an informal con-

ference with the conferee designated by the Internal Revenue Service, and I believe Mr. Morris participated in two conferences."

It appears that, from this colloquy, the only objection made by plaintiff or his attorneys was that he, the plaintiff, didn't believe that he could have made that much money, and he was concerned with another item of rental income that apparently was later reconciled.

Meredith W. Putman, son of plaintiff, then testified as to Defendant's Exhibit VVV, which was a schedule of loans discussed in the deposition theretofore taken of the witness.

At the conclusion of all the testimony, plaintiff moved for a dismissal of the claims against him for the years 1941 through 1946. Action on this motion was deferred.

At the conclusion of some rebuttal testimony, the Government moved to amend the pleadings to conform to the evidence so as to preserve a set-off in event any of the tax years in question were set aside. The Government further moved for judgment at the close of all the evidence. Action on these motions was deferred.

In the course of our study of this case, we have reviewed, among other cases, the following: Gariepy v. United States, 6 Cir., 1951, 189 F.2d 459. In this case, at page 463, we note the following:

"* * * In other words, his counsel asserts that he may have had a legitimate 'nest egg,' accumulated in previous years, with which to make such investments, and, impliedly, out of unexplained but untaxable income. The argument borders on the fantastic. If there were such sizable 'nest egg' some proof would certainly have been available other than the testimony of the defendant himself. * * *".

In this Gariepy case, the Treasury Agents were unable to find adequate records disclosing receipts of income by the appellant and they therefore, pursued the "net worth" method of computation. The Court was of the opinion that the method of computation requires a starting point reasonably well established as accurate, and the Court concluded that the evidence of deliberate and wilful evasion was overwhelming. The Gariepy case seems to fit well with the situation that we have in the instant case.

We have also examined Brodella v. United States, 6 Cir., 1950, 184 F.2d 823; Thomas v. Commissioner of Internal Revenue, 6 Cir., 1955, 223 F.2d 83; Drieborg v. Commissioner of Internal Revenue, 6 Cir., 1955, 225 F.2d 216; Hasson v. Commissioner of Internal Revenue, 6 Cir., 1956, 239 F.2d 778; Vise v. Commissioner of Internal Revenue, 6 Cir., 1960, 278 F.2d 642; and Rubinstein, Petitioner, v. Commissioner of Internal Revenue, Respondent, 1958, 29 T.C. 861, (Acquiesced in Internal Revenue Bulletin, March 28, 1960, No. 1960–13, page 6).

Plaintiff relies, among others, on the Drieborg and Rubinstein, supra, cases.

We must conclude, from all the evidence, including the testimony of plaintiff himself, that here we have an individual who nursed a lifetime abhorrence of the payment of taxes and who pursued through the years a conduct of "deliberate and wilful evasion" that seems to us overwhelming.

■ We find no fault with the starting point December 31, 1941, for the computation of tax. We wholly disbelieve the representations of plaintiff that he kept large sums of cash up to $60,000 in bills of large denomination in his safe and in his safety deposit box, especially in view of his earlier declarations to the Agents that he kept no large sums of cash because he liked to have it working for him. We believe that the statements of the plaintiff in this connection are incredible. We believe that the Government has clearly established wilful and deliberate fraud in each of the years in question, 1942, to 1954, both inclusive.

■ Our main concern has been over the tax years of 1942 to 1946, both in-

clusive, because for these years the Government was unable to produce the tax returns of plaintiff, they having been destroyed, and, in addition, it was unable to produce copies of the same. From a perusal of the aforementioned cases, we, of course, are aware of the rule in the Sixth Circuit that in the absence of secondary evidence of the contents of a missing return the Government may not succeed on the fraud issue (Drieborg v. Commissioner, supra); that the rule is otherwise where the Government offers ample secondary evidence.

■ The Government, in this case, has in our opinion offered ample secondary evidence not only by way of showing the actual income tax paid by the plaintiff during the years 1942 to 1946, both inclusive, but by supplementing thereto and crediting therefor the maximum number of dependency exemptions which plaintiff was possessed of, by computing a reverse computation of the taxpayer's reportable taxable income, by the admission of the taxpayer that he had large earnings, rather than losses, in the years prior to 1942, thereby eliminating the possibility of loss carry-overs, and by the taxpayer's returns for the years subsequent to 1946, which show no loss which could be carried back to the period in question, by the taxpayer's admission that he received no non-taxable or excludable income in any of the years in controversy, and by the taxpayer's own concurrence in the computation made by the Agents on the occasion of the latter two conferences held by the Agents with plaintiff and his attorneys.

■ It appears to us, from the record, that the reconstructed net income has not been seriously or adequately challenged by plaintiff sufficient to sustain his burden of proof.

We are mindful of plaintiff's reliance in particular on the Rubinstein case, supra, and acquiescence therein by the Internal Revenue Service. We are mindful, however, of the restriction of the Service in extending its acquiescence in that the conclusions of the Service apply only to the application of the law to the facts in the particular case.

In the opinion of Judge Opper, 29 T. C. at page 863, he makes this statement:

"* * * This is not a case where the contents of the return have been demonstrated by secondary evidence. The only thing shown is the amount of tax due as entered on the collector's assessment list. * * * *".

We believe that the Rubinstein case cannot govern us in our conclusions in the instant case.

Our answer to both questions herein involved is in the affirmative.

The motion of plaintiff for dismissal of the claims against him for the years 1941 through 1946 is overruled.

The motion of the Government to amend the pleadings to conform to the evidence so as to preserve a set-off in event any of the tax years in question are set aside is overruled in view of our conclusions, with leave to renew the motion in the future if it becomes advisable.

The motion of the Government for judgment in each of the years involved made at the close of all the evidence is sustained.

The Government may, within fifteen (15) days, prepare Findings of Fact and Conclusions of Law drawn in accordance with this Opinion, and the plaintiff may, within ten (10) days thereafter, file his exceptions and suggested additions thereto.

*An order may be drawn accordingly.*